MICHAEL J. HADDAD (State Bar No. 189114)
JULIA SHERWIN (State Bar No. 189268)
T. KENNEDY HELM (State Bar No. 282319)
GLENN KATON (State Bar No. 281841)
HADDAD & SHERWIN LLP
505 Seventeenth Street
Oakland, California  94612
Telephone: (510) 452-5500
Fax: (510) 452-5510

Attorneys for Plaintiff
RICHARD EARL MAY, JR.

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RICHARD EARL MAY, JR., Individually, <br><br>　　　　　Plaintiff, <br><br>vs. <br><br>SAN MATEO COUNTY, a public entity, SAN MATEO COUNTY SHERIFF GREG MUNKS, in his individual and official capacities, DEPUTY JOHN SANCHEZ, DEPUTY CHRIS LAUGHLIN, DEPUTY ERIC MICHEL, and DOES 1 through 10, individually, Jointly and Severally, <br><br>　　　　　Defendants. | No. 3:16-cv-00252-LB <br><br> Hon. Laurel Beeler <br><br> **JOINT INITIAL CASE MANAGEMENT STATEMENT** |

The parties to the above-entitled action jointly submit this Case Management Statement and Proposed Order and request the Court adopt it as its Case Management Order in this case.

1. **Jurisdiction and Service**: Plaintiff brings civil rights claims arising under 42 U.S.C. §§ 1983 and 1988; the Fourth Amendment to the United States Constitution; and state law claims. This Court has original jurisdiction over the federal civil rights claims pursuant to 28 U.S.C. §§ 1331 and 1343(a)(3) and (4), and supplemental jurisdiction over state law claims pursuant to 28 U.S.C. § 1367. Defendants do not assert any counterclaims, and they acknowledge the proper jurisdiction of the United States District Court for the Northern District of California in this matter. There are no issues regarding personal jurisdiction or venue. All named parties have been served and have appeared.

2. **Facts:**

   a. **Plaintiff's Statement:**

   This is a civil rights action arising from Defendants' unreasonable seizure, and use of excessive force, against Plaintiff Richard Earl May, Jr., on or about January 1, 2015 in the city of Half Moon Bay, San Mateo County, California. At about 10:00 p.m. on January 1, 2015, Mr. May entered the Mid-Peninsula Housing commercial construction site, in the vicinity of 1 Bloom Lane, to help a friend, ("S"), look for her cat, "Domino," who was trapped in a partially constructed building. At the time of the incident, Mr. May was 62 years old, and "S" was 73 years old. Before entering the construction site, Mr. May and "S" attempted to call the company responsible for security at the site by dialing the number posted on a sign on a fence around the site's perimeter. The number was incorrect, however, and instead connected with a medical supply company in Ohio. Fearing for the cat's safety, Mr. May entered the construction site with "S" to rescue Domino, which they could hear meowing from the building under construction. Once Mr. May and "S" entered the construction site, "S" attempted to find a security guard who could help them. There was no security guard on site, however.

   Mr. May and "S" retrieved Domino from the building under construction and walked towards the fence of the construction site to leave. Meanwhile, a security alarm had gone off at

the construction site, and SMCSO deputies, including but not limited to Deputies Sanchez, Michel, and Laughlin had arrived and had established a perimeter around the construction site. Deputies Sanchez, Michel, and Laughlin, with Laughlin's police canine, "Riggs," a German Shepherd, entered the construction site. Deputies Sanchez, Michel, and Laughlin could clearly see Mr. May at great distance, given that the construction site was illuminated. Deputies Sanchez, Michel, and Laughlin, with Riggs, approached Mr. May and "S."

As Mr. May and "S" walked toward the fence, they heard a commotion coming from the other end of the construction site and turned around. Mr. May and "S" saw Deputies Sanchez, Michel, Laughlin, and Riggs approaching. Mr. May and "S" stopped so that they could explain to Deputies Sanchez, Laughlin, and Michel that they had entered the construction site to rescue the cat. At this time, "S" was holding the cat in her arms; Mr. May, dressed in jeans and a plaid shirt, had nothing in his hands, which were both visible. Mr. May was standing still with one hand at his side, and another hand on the fence, against which he was leaning. There was no gate or exit to the construction site where Mr. May and "S" were standing.

Neither Mr. May nor "S" resisted, attempted to flee, nor did either of them do or say anything threatening towards Deputies Sanchez, Laughlin, Michel, Riggs, or anyone else. Neither Mr. May, nor "S," had any outstanding warrants for their arrest. Despite this, and without warning, Deputies Laughlin, Sanchez, and/or Michel unleashed Riggs and gave a loud command in a foreign language; Riggs ran toward Mr. May, touched Mr. May's body with his nose, and then ran back towards Deputies Sanchez, Laughlin, and Michel.

Then, without giving any kind of audible warning, Deputies Laughlin, Michel, and/or Sanchez commanded Riggs very loudly, again in a foreign language, to attack Mr. May. None of Deputies Laughlin, Michel, Sanchez, nor anyone else, had either reasonable suspicion or probable cause to believe that Mr. May had committed a serious or violent crime, or that he was about to flee. Mr. May had nothing in his hands, which were clearly visible, was neither fleeing nor resisting, and posed no immediate threat to Deputies Laughlin, Michel, Sanchez or anyone else.

No. 3:16-cv-00252-LB: JOINT INITIAL CASE MANAGEMENT STATEMENT                 2

Pursuant to the Deputies' commands, Riggs ran towards Mr. May and bit his leg, causing him excruciating pain.

Mr. May immediately fell to the ground. One or more of Deputies Sanchez, Michel, and/or Laughlin commanded Mr. May to get on the ground, even though Mr. May had already complied. Despite Mr. May's compliance, Riggs continued to bite, chew, and maul his right leg for an inordinately excessive amount of time—more than sufficient time for deliberation by all Deputies. Mr. May was not resisting, not fighting, not threatening anyone, but rather was crying out in pain, and he was lying on the ground on his stomach surrounded by Deputies Sanchez, Michel, and Laughlin.

Nevertheless, neither Deputy Sanchez, Michel, nor Laughlin commanded Riggs to stop biting Mr. May, nor did anyone attempt to intervene to stop the biting. Finally, either Deputy Laughlin, Michel, or Sanchez called off Riggs, who finally stopped biting Mr. May.

While Mr. May was lying on the ground, Deputies Laughlin, Sanchez, Michel, and possibly other deputies, handcuffed him and searched him. Deputies Laughlin, Sanchez, Michel, and possibly other deputies, then led Mr. May out of the construction site and sat him on a curb. Paramedics rinsed Mr. May's leg off with saline and hydrogen peroxide and then put a sock-like bandage over the injured leg.

Deputies Laughlin, Sanchez, Michel, and, possibly other deputies, then put Mr. May in a patrol vehicle, where he remained for about 20–30 minutes in great pain before he was taken to the SMCSO Half Moon Bay substation. Mr. May then was held at the SMCSO Half Moon Bay substation for about an hour, where Deputies Laughlin and Michel took turns questioning him; neither Deputy Laughlin, nor Michel, nor anyone else, asked Mr. May whether he had been armed. Mr. May was not armed.

Deputy Laughlin then transported Mr. May to the emergency room at the San Mateo Medical Center. Before leaving Mr. May in the hospital's waiting room, Deputy Laughlin gave Mr. May a Notice to Appear for allegedly having violated both California Penal Code § 602(m) (entering and occupying real property or structures of any kind without the consent of the owner,

1  the owner' agent, or the person in lawful possession) and California Penal Code § 148(a)(1)
2  (resisting, delaying, or obstructing an officer), both misdemeanors. Deputy Laughlin also handed
3  Mr. May a metallic sticker with a depiction of a German Shepherd, with words to the effect of "I
4  met Riggs." The San Mateo County District Attorney declined to pursue these misdemeanor
5  charges against either Mr. May or "S."

6        **b.**    **Defendants' Statement:**

7      In the late evening on January 1, 2015, the individually named Defendant-Sheriff's
8  deputies along with the K-9 "Riggs" were dispatched to a multi-building, fenced construction site
9  in Half Moon Bay based on a report by a security company of a commercial burglary (a felony) in
10 progress involving multiple suspects. Shortly after gaining access to the site by pulling down part
11 of a metal perimeter fence, deputies observed Plaintiff, who matched the description of one of the
12 suspects provided by the reporting party, moving toward the perimeter fence at some distance
13 from the deputies' position. As the deputies moved toward Plaintiff, Plaintiff was commanded to
14 stop and display his hands and was warned that non-compliance may result in the release of K-9 to
15 apprehend him.

16     Plaintiff did not comply with the command. Deputies determined that Plaintiff posed an
17 immediate risk of flight and harm to the responding deputies, based on factors including but not
18 limited to the information provided by the reporting party, Plaintiff's refusal to comply with
19 commands, Plaintiff's movements and positioning, and the surrounding circumstances. Riggs was
20 then commanded to apprehend Plaintiff. After the deputies and Riggs closed the distance to
21 Plaintiff, but before Riggs actually apprehended Plaintiff, the command to Plaintiff to stop and
22 display his hands was repeated. Plaintiff continued to refuse to display his hands, which were
23 concealed near his waist. Riggs was then ordered to apprehend Plaintiff, which it did by biting
24 Plaintiff's leg. Plaintiff was ordered to display his hands several additional times and eventually,
25 though not immediately, complied, at which point Riggs was ordered to, and did, release Plaintiff.
26 Plaintiff was then treated onsite by paramedics and cleared for transportation.

27       **3.**    **Legal Issues:** The principal legal issues in dispute include:

28 No. 3:16-cv-00252-LB: JOINT INITIAL CASE MANAGEMENT STATEMENT    4

a. Whether Defendants violated Plaintiff's Fourth Amendment right to be free from unreasonable searches and seizures;

b. Whether Defendants violated Plaintiff's Fourth Amendment right to be free from the use of excessive force;

c. Whether any violation of rights was pursuant to an unconstitutional custom, policy, or practice of Defendant San Mateo County and/or Does 1–10 such as to render San Mateo County liable under *Monell v. Department of Social Services of New York City*, 436 U.S. 658 (1978);

d. Whether Defendant San Mateo County and/or Does 1–10 may be held liable for any violation of rights for failure, if any, to properly and lawfully hire, train, supervise, investigate, or control other Defendants and San Mateo County personnel in this matter;

e. Whether Defendants violated California Civil Code § 52.1;

f. Whether Defendants' conduct subjects them to liability for Plaintiff's state law claims, including negligence, assault, and battery; and

g. The nature and amount of economic and noneconomic damages, if any.

h. Whether any Defendants sued in their individual capacities are entitled to qualified immunity.

i. Whether any Defendants are entitled to sovereign immunity.

j. Whether any Defendants are immune or otherwise exempt from liability under applicable state law.

**4. Motions:** There are no prior or pending motions. Plaintiff may move for partial summary judgment, based on discovery, if appropriate. Defendants anticipate filing a motion for summary judgment and/or judgment on the pleadings. The parties reserve their rights to bring all appropriate motions.

**5. Amendment of Pleadings:** The parties have not yet exchanged initial disclosures; therefore, the specific identities and conduct of others are unknown at this time.

Plaintiff may seek to amend the Complaint to add parties and/or claims should a basis for such amendment become apparent after the parties' disclosures and some discovery. Plaintiff and Defendants stipulate that the deadline to amend the pleadings be 45 days after service of initial disclosures on April 14, 2016, which would be May 31, 2016.

**6.     Evidence Preservation:**

**Plaintiff's Statement:**

The parties have reviewed the Guidelines Relating to the Discovery of Electronically Stored Information ("ESI Guidelines") and have met and conferred pursuant to Federal Rule of Civil Procedure 26(f) regarding reasonable and proportionate steps taken to preserve evidence relevant to the issues reasonably evident in this action. Defendants represent that they have preserved all emails concerning the incident described in the Complaint. Plaintiff also requests mutual preservation of all other ESI in each party's custody or control that is related to this incident, including but not limited to: photos, video and audio recordings, text messages, phone logs, social media postings and/or comments, information on officers' mobile data terminals or in-car computers, drafts of incident/investigation reports, notes, and other records related to this incident, and other ESI data. Because Plaintiff lacks knowledge of the ESI in Defendants' sole custody and control, Plaintiff cannot provide a list of requested ESI.

**Defendants' Statement:**

During the Rule 26(f) conference, Defendants' counsel informed Plaintiff's counsel that appropriate and reasonable measures have been taken to preserve the electronic mail of named individual Defendants relevant to this matter and invited counsel to discuss the scope of anticipated discovery of ESI. Plaintiff's counsel did not provide a list of requested ESI during the Rule 26(f) conference, and the parties have therefore to date not agreed on a reasonable and proportionate scope of preservation of any ESI other than electronic mail. Defendants agree to meet and confer should any ESI issues arise over the course of discovery.

**7.     Disclosures:** The parties will exchange initial disclosures as required.

**8.** **Discovery:** The parties have not taken any discovery to date, nor have the parties considered entering into a stipulated e-discovery order.  The parties have agreed to submit a proposed protective order, based on the Northern District of California's model order, regarding, among other things, discovery of confidential employee records and training records.

**Discovery Plan:**  The parties propose the following discovery plan pursuant to Federal Rule of Civil Procedure 26(f):

a. Interrogatories and Requests for Admission will be limited to 25 per side. Plaintiff constitutes a "side," and Defendants constitute a "side." Therefore, Defendants may, collectively, serve 25 Interrogatories and 25 Requests for Admissions. Plaintiff may also serve 25 Interrogatories and 25 Requests for Admissions.

b. The parties stipulate, pursuant to Federal Rule of Civil Procedure 30(a)(2)(A)(i), to exceed the 10-deposition per side limit. Specifically, Plaintiff may take up to 15 depositions, comprised of up to 10 depositions of up to 7 hours long, and up to 5 depositions of up to 4 hours long. Defendants may also take up to 15 depositions, comprised of up to 10 depositions of up to 7 hours long, and up to 5 depositions of up to 4 hours long. This stipulated increase in the total number of depositions per side is appropriate because there are four named Defendants and other unidentified deputies, including supervisors, whose identities are not yet known and who may also have been involved in the incident. Plaintiff also anticipates needing to depose certain Federal Rule of 30(b)(6) witnesses, such as, for example, the San Mateo County Sheriff's Office's 30(b)(6) designee on training of canines and of canine-handling deputies. This stipulation applies to fact witnesses, not expert witnesses.

c. All other discovery is to be conducted pursuant to the Federal Rules of Civil Procedure;

        d.        Supplemental disclosures are required according to the Federal Rules of Civil Procedure;

        e.        All documents produced by the parties, including initial disclosures, shall be bates numbered;

        f.        The parties will submit a stipulated protective order concerning confidential and/or privileged documents in this matter; and

        g.        The deadlines for discovery and expert reports may be altered only by Court order or by written stipulation of all parties, provided no other dates are affected.

**9.** **Class Actions:** This is not a class action.

**10.** **Related Cases:** None.

**11.** **Relief:** Plaintiff seeks compensatory and exemplary damages in an amount according to proof and which is fair, just, and reasonable; punitive damages under 42 U.S.C. § 1983 and California law; and all other damages, penalties, costs, interest, and attorneys' fees as allowed by 42 U.S.C. §§ 1983 and 1988; California Civil Code § 52, et seq.; § 52.1; California Code of Civil Procedure § 1021.5; and as otherwise may be allowed by California and/or federal law.  Plaintiff also seeks injunctive relief related to Defendants' policies, procedures, hiring, and training.  Defendants deny that Plaintiff is entitled to any relief.

**12.** **Settlement and ADR:** There have been no settlement discussions to date.  The parties jointly propose a settlement conference before a Magistrate Judge in November 2016, and *the parties respectfully request a settlement conference before Magistrate Judge Donna Ryu, if she is available.*

**13.** **Consent to Magistrate Judge for All Purposes:** All parties have consented to proceed before Magistrate Judge Laurel Beeler for all purposes, including trial and entry of judgment.

**14.** **Other References:** This case is not suitable for reference to binding arbitration, a special master, or the Judicial Panel on Multidistrict Litigation.

No. 3:16-cv-00252-LB: JOINT INITIAL CASE MANAGEMENT STATEMENT    8

**15.** **Narrowing of Issues:** None.

**16.** **Expedited Trial Procedure:** The parties do not believe that this case could be handled under the Expedited Trial Procedure of General Order No. 64 Attachment A.

**17.** **Scheduling:**

The parties propose the following schedule:

| | | |
|---|---|---:|
| a. | Initial disclosures due: | April 14, 2016 |
| b. | Deadline to amend the pleadings | May 31, 2016 |
| c. | Settlement conference with a magistrate judge: | November, 2016 |
| d. | Fact discovery cutoff: | January 2, 2017 |
| e. | Expert disclosures due: | January 23, 2017 |
| f. | Last day to file dispositive/non-dispositive motions: | February 1, 2017 |
| g. | Rebuttal expert disclosure due: | February 20, 2017 |
| h. | Last day to hear dispositive/non-dispositive motions: | March 23, 2017 |
| i. | Expert discovery cutoff: | April 21, 2017 |
| j. | Final Pretrial Conference: | May 18, 2017 |
| k. | Trial Date (subject to this Court's availability): | June 5, 2017 |

**18.** **Trial:** The parties estimate that trial of this matter will take up to 8 court days.

**19.** **Disclosure of Non-Party Interested Entities or Persons:** The parties are unaware of any non-parties whose interests could be substantially affected by the outcome of the proceeding.

**20.** **Professional Conduct:** All attorneys of record for the parties have reviewed the Guidelines for Professional Conduct for the Northern District of California.

**21.** **Other Matters:** None.

| | | |
|---|---|---|
| 1 | | |
| 2 | DATED: April 14, 2016 | HADDAD & SHERWIN LLP |
| 3 | | /s/ *Michael J. Haddad* |
| 4 | | MICHAEL J. HADDAD<br>Attorneys for Plaintiff RICHARD EARL MAY, JR. |
| 6 | DATED: April 14, 2016 | JOHN C. BEIERS<br>SAN MATEO COUNTY COUNSEL |
| 8 | | /s/ *Justin W. Mates**  |
| 9 | | JUSTIN W. MATES<br>Deputy County Counsel<br>Attorneys for Defendants SAN MATEO COUNTY, SAN MATEO COUNTY SHERIFF GREG MUNKS, DEPUTY JOHN SANCHEZ, DEPUTY CHRIS LAUGHLIN, DEPUTY ERIC MICHEL |

*Mr. Mates provided his consent that this document be electronically filed.

**PROPOSED ORDER**

By stipulation and agreement of all parties to this action, this Court hereby adopts the Joint Case Management Conference Statement as its order in this matter.

**IT IS SO ORDERED.**

DATED: _____        _____
HON. LAUREL BEELER
UNITED STATES MAGISTRATE JUDGE