1  MICHAEL J. HADDAD (State Bar No. 189114)
   JULIA SHERWIN (State Bar No. 189268)
2  T. KENNEDY HELM (State Bar No. 282319)
   MAYA SORENSEN (State Bar No. 250722)
3  HADDAD & SHERWIN LLP
   505 Seventeenth Street
4  Oakland, California  94612
   Telephone: (510) 452-5500
5  Fax: (510) 452-5510
6
7  Attorneys for Plaintiff
   RICHARD EARL MAY, JR.
8
9              UNITED STATES DISTRICT COURT
10             NORTHERN DISTRICT OF CALIFORNIA
11
12 RICHARD EARL MAY, JR.,                    )
13 Individually,                             )   No. 3:16-cv-00252-LB
                                             )
14                Plaintiff,                 )   Hon. Laurel Beeler
                                             )
15 vs.                                       )   PLAINTIFF'S NOTICE AND MOTION
                                             )   FOR PARTIAL SUMMARY
16 SAN MATEO COUNTY, a public entity;        )   JUDGMENT; MEMORANDUM OF
   SAN MATEO COUNTY SHERIFF'S                )   POINTS AND AUTHORITIES IN
17 DEPUTY CHRIS LAUGHLIN; DEPUTY             )   SUPPORT
   ERIC MICHEL; and DOES 1 through 10,       )
18 individually, Jointly and Severally,      )   Date: March 23, 2017
                                             )   Time: 9:30 a.m.
19                Defendants.                )   Place: Courtroom C, 15th Floor
                                             )
20                                           )
                                             )
21                                           )
                                             )
22                                           )
                                             )
23                                           )
                                             )
24 _____  )
25
26
27
28

## NOTICE AND MOTION FOR PARTIAL SUMMARY JUDGMENT

**TO ALL DEFENDANTS AND THEIR ATTORNEYS OF RECORD:**

Please take notice that on March 23, 2017 at 9:30 a.m. in Courtroom C, 15th Floor, Plaintiff Richard Earl May, Jr. will move this Court for partial summary judgment, pursuant to Federal Rule of Civil Procedure 56, as follows:

1. A declaratory judgment and finding of liability against Defendant Chris Laughlin as to Plaintiff's claim, under 42 U.S.C. § 1983, for violation of the Fourth Amendment based on warrantless arrest without probable cause. (First Amended Complaint (FAC), Count One (Doc. 44)).

2. A declaratory judgment that Defendant Laughlin is not entitled to qualified immunity for violating Plaintiff's clearly established right, under the Fourth Amendment, to be free from a warrantless arrest without probable cause.

3. In the alternative, a declaratory judgment and corresponding jury instruction that Defendant Laughlin lacked probable cause to arrest Plaintiff for having committed any felony under California law, including but not limited to a felony under California Penal Code §§ 459 and 460.

4. In the alternative, a declaratory judgment and corresponding jury instruction that Defendant Laughlin lacked probable cause to arrest Plaintiff for any misdemeanor under California law, including but not limited to California Penal Code §§ 459, 460, 602(m), and 148(a).

5. A declaratory judgment and finding of liability against Defendant Laughlin as to Plaintiff's claim for false arrest under California law. (FAC, Count Six).

6. If this Court finds Defendant Laughlin liable for false arrest under California law, then a declaratory judgment and finding of vicarious liability against Defendant San Mateo County under California Government Code § 815.2.

7. In the alternative, a declaratory judgment and corresponding jury instruction that Defendant Laughlin lacked probable cause to effect a custodial arrest for any crime under California law, including but not limited to California Penal Code §§ 459, 460, 602(m), and 148(a).

8. A declaratory judgment and finding of liability against Defendant Laughlin as to Plaintiff's

Bane Act claim, Cal. Civil Code § 52.1, *et seq.*, based on Defendant Laughlin's arrest without probable cause (federal claim and/or state claim) of Plaintiff and the accompanying threat, intimidation, and coercion, in the deployment of *Riggs* to bite and hold him.  (FAC, Count Three).

9.  If this Court finds Defendant Laughlin liable under the Bane Act, Cal. Civil Code § 52.1 *et seq.*, then a declaratory judgment and finding of vicarious liability against Defendant San Mateo County under California Government Code § 815.2

This motion is based on the Memorandum of Points and Authorities that follows; the Declaration of T. Kennedy Helm, with exhibits filed in support of the motion; all documents and records in the court record for this case; and on such further written and/or oral argument and evidence as may be submitted.

Respectfully Submitted,

DATED: February 16, 2017                HADDAD & SHERWIN LLP

/s/ T. Kennedy Helm
_____

T. KENNEDY HELM
Attorneys for Plaintiff

## MEMORANDUM OF POINTS AND AUTHORITIES

## TABLE OF CONTENTS

TABLE OF CONTENTS ........................................................................................................ iii

TABLE OF AUTHORITIES .....................................................................................................v

I.    INTRODUCTION ............................................................................................1

II.   STATEMENT OF FACTS ...............................................................................2

    A.    San Mateo County Sheriff's Deputies—including Defendants Laughlin and Michel—respond to a report of two to three people, including a person in plaid and a person in black, jumping over the fence of a senior housing project construction site and stacking items near the fence. ...............................................................................2

    B.    After Defendant Michel breaks down a section of fence to enter the construction site, Deputy Laughlin spots Mr. May, sees him walk slowly away, and releases *Riggs* to bite and hold him. ...............................................................................3

    C.    Pursuant to Defendant San Mateo County Sheriff's Office's Canine Services Unit Manual, Defendant Laughlin knew that he needed probable cause to believe Mr. May had committed a serious or violent felony, and he had been trained on the elements of burglary since the police academy...........................................................5

III.   STANDARD OF REVIEW .............................................................................11

IV.   ARGUMENT ..................................................................................................12

    A.    Based on the facts known to Defendant Laughlin—the arresting officer—at the time of the arrest, no reasonable jury could find that probable cause existed to arrest Mr. May for burglary, Cal. Penal Code §§ 459, 460; trespass, Cal. Penal Code § 602(m); or resisting arrest, Cal. Penal Code § 148(a). .......................................12

        1.    Clearly established Ninth Circuit precedent requires law enforcement officers to establish probable cause through pre-arrest investigation, which Defendant Laughlin failed to do..................................................14

        2.    No reasonable jury could find that Defendant Laughlin had any facts constituting probable cause for either element of California Penal Code § 459 so as to lawfully arrest Mr. May for commercial burglary...................................................15

        3.    No reasonable jury could find that Defendant Laughlin had any facts constituting probable cause to believe that Mr. May had committed trespass in violation of California Penal Code § 602(m), a misdemeanor, because he had no facts to satisfy the 'occupying' element. ...................................................16

4.   No reasonable jury could find that an officer in Defendant Laughlin's position had probable cause to arrest Mr. May for having violated California Penal Code § 148, because Defendant Laughlin did not have probable cause to arrest Mr. May for California Penal Code §§ 459, 460 (or 602(m)), and he was accordingly not in the lawful performance of his duties when he sicced *Riggs* to apprehend Mr. May. ..........................18

B.   Defendant Laughlin is not entitled to qualified immunity for his unreasonable, mistaken belief that probable cause existed to arrest Mr. May for violating California Penal Code §§ 459, 460, 602(m), and 148. ..................................................................................................18

C.   By violating Plaintiff's Fourth Amendment right to be free from an arrest without probable cause, Defendant Laughlin is liable for the California state law tort of false arrest, as is Defendant San Mateo County. ...............................................................................................21

D.   By falsely arresting Mr. May and siccing *Riggs* to bite and hold him, causing serious injury, Defendant Laughlin violated the Bane Act, incurring his own liability and that of Defendant San Mateo County. .................................................................................................................21

V.   CONCLUSION AND RELIEF REQUESTED ..................................................................24

# TABLE OF AUTHORITIES

## <u>Federal Cases</u>

*Anderson v. Creighton*,
  483 U.S. 635 (1987) ................................................................................................ 20

*Anderson v. Liberty Lobby, Inc.*,
  477 U.S. 242 (1986) ................................................................................................ 11

*Arpin v. Santa Clara Valley Transportation Agency*,
  261 F.3d 912 (9th Cir. 2001) .................................................................................. 14

*Bass v. City of Fremont*,
  No. C12-4943 TEH,
  2013 U.S. Dist. LEXIS 32590 (N.D. Cal., Mar. 8, 2013) ...................................... 22

*Beck v. Ohio*,
  379 U.S. 89 (1964) .................................................................................................. 13

*Beecham v. City of West Sacramento*,
  No. Civ. S-07-1115 JAM EFB,
  2008 U.S. Dist. LEXIS 85126 (E.D. Cal. Oct. 22, 2008) ...................................... 19

*Beier v. City of Lewiston*,
  354 F.3d 1058 (9th Cir. 2004) ................................................................................ 19

*Blankenhorn v. City of Orange*,
  485 F.3d 463 (9th Cir. 2007) .................................................................................. 21

*Brown v. City & County of San Francisco*,
  No. C 11-02162 LB,
  2014 U.S. Dist. LEXIS 48386 (N.D. Cal. Apr. 7, 2014) ................................... 19, 22

*Cameron v. Craig*,
  713 F.3d 1012 (9th Cir. 2013) ................................................................................ 23

*Celotex Corp. v. Catrett*,
  477 U.S. 317 (1986) ................................................................................................ 11

*Chaudhry v. City of Los Angeles*,
  751 F.3d 1096 (9th Cir. 2014) ................................................................................ 23

*Chudacoff v. University Medical Center of Southern Nevada*,
  649 F.3d 1143 (9th Cir. 2011) ................................................................................ 12

*Collins v. Jordan*,
  110 F.3d 1363 (9th Cir. 1997)............................................................................... 18

*County of Tuolumne v. Sonora Community Hospital*,
  236 F.3d 1148 (9th Cir. 2001)................................................................................ 2

*D.V. v. City of Sunnyvale*,
  65 F. Supp. 3d 782 (N.D. Cal. 2014) .................................................................. 22

*Davis v. City of San Jose*,
  No. 14-CV-02035 BLF,
  2014 U.S. Dist. LEXIS 84641 (N.D. Cal. June 20, 2014) ...................................... 22

*Deorle v. Rutherford*,
  272 F.3d 1272 (9th Cir. 2001)................................................................................ 20

*Devenpeck v. Alford*,
  543 U.S. 146 (2004) ................................................................................................ 13

*Dillman v. Tuolumne County*,
  No. 1:13-CV-00404 LJO SKO,
  2013 U.S. Dist. LEXIS 65206 (E.D. Cal., May 7, 2013)........................................ 23

*Drummond v. City of Anaheim*,
  343 F.3d 1052 (9th Cir. 2003)................................................................................ 20

*Dubner v. City & County of San Francisco*,
  266 F.3d 959 (9th Cir. 2001).................................................................................. 12

*Fuller v. M.G. Jewelry*,
  950 F.2d 1437 (9th Cir. 1991)................................................................................ 14

*Gasho v. United States*,
  39 F.3d 1420 (9th Cir. 1994), *cert. denied*, 115 S. Ct. 2852 (1995) ................................... 16, 19

*Gerstein v. Pugh*,
  420 U.S. 103 (1975) ................................................................................................ 14

*Gilker v. Baker*,
  576 F.2d 245 (9th Cir. 1978).................................................................................. 12

*Graham v. Connor*,
  490 U.S. 386 (1989) .................................................................................................. 1

*Green v. City & County of San Francisco*,
  751 F.3d 1039 (9th Cir. 2014)................................................................................... 5

*Harlow v. Fitzgerald*,
  457 U.S. 800, 815 (1982) .......................................................................... 18

*Headwaters Forest Defense v. County of Humboldt ("Headwaters II")*,
  276 F.3d 1125 (9th Cir. 2002) .................................................................. 20

*Hope v. Pelzer*,
  536 U.S. 730 (2002) ................................................................................. 20

*Hopkins v. Bonvicino*,
  573 F.3d 752 (9th Cir. 2009), *cert. denied*, 130 S. Ct. 2342 (2010) ......................................... 14

*Houghton v. South*,
  965 F.2d 1532 (9th Cir. 1992) .................................................................. 18

*Johnson v. Bay Area Rapid Transit District*,
  724 F.3d 1159 (9th Cir. 2013) ............................................................. 19, 20

*Kanekoa v. Honolulu*,
  879 F.2d 607 (9th Cir. 1989) .................................................................... 14

*Kennedy v. Los Angeles Police Department*,
  901 F.2d 702 (9th Cir. 1989) ................................................................ 16, 19

*Knox v. Southwest Airlines*,
  124 F.3d 1103 (9th Cir. 1997) .................................................................. 19

*Lacey v. Maricopa County*,
  693 F.3d 896 (9th Cir. 2012) (en banc) ..................................................... 14

*Lolli v. County of Orange*,
  351 F.3d 410 (9th Cir. 2003) .................................................................... 19

*M.H. v. County of Alameda*,
  90 F. Supp. 3d 889 (N.D. Cal. 2013) ........................................................ 22

*Mallory v. United States*,
  354 U.S. 449 (1957) ................................................................................. 14

*Mateos-Sandoval v. County of Sonoma*,
  No. C11-5817 TEH,
  2013 U.S. Dist. LEXIS 104549 (N.D. Cal. July 25, 2013) ....................... 23

*McKenzie v. Lamb*,
  738 F.2d 1005 (9th Cir. 1984) ................................................ 11, 12, 13, 21

*Mendocino Environmental Center. v. Mendocino County*,
  192 F.3d 1283 (9th Cir. 1999) .................................................................. 14

*Michigan v. DeFillippo*,
    443 U.S. 31 (1979) ........................................................................................ 13

*Moreno v. Baca*,
    431 F.3d 633 (9th Cir. 2005) ..................................................................... 13, 18

*Moreno v. Town of Los Gatos*,
    267 F. App'x. 665 (9th Cir. 2008) ................................................................. 22

*Motley v. Parks*,
    432 F.3d 1072 (9th Cir. 2005) (en banc) ........................................................ 14

*Pearson v. Callahan*,
    129 S. Ct. 808 (2009) ...................................................................................... 19

*Robinson v. Solano County*,
    278 F.3d 1007 (9th Cir. 2002) (en banc) ........................................................ 21

*Rodriguez v. City of Modesto*,
    No. 1:10-CV-01370-LJO-MJS,
    2013 U.S. Dist. LEXIS 172958 (E.D. Cal. Dec. 9, 2013) .............................. 23

*Rosenbaum v. Washoe County*,
    663 F.3d 1071 (9th Cir. 2011) ........................................................................ 19

*Sanchez v. City of Fresno*,
    No. 1:12-CV-00428-LJO-SKO,
    2013 U.S. Dist. LEXIS 68561 (E.D. Cal. May 14, 2013) ............................... 23

*Santos v. Gates*,
    287 F.3d 846 (9th Cir. 2002) .......................................................................... 19

*Saucier v. Katz*,
    533 U.S. 194 (2001) ........................................................................................ 20

*Skeels v. Pilegaard*,
    No. C12-2175 TEH,
    2013 U.S. Dist. LEXIS 34302 (N.D. Cal. Mar. 12, 2013) .............................. 23

*Smith v. City of Hemet*,
    394 F.3d 689 (9th Cir. 2005) (en banc) .......................................................... 18

*Tolan v. Cotton*,
    134 S. Ct. 1861 (2014) .................................................................................... 20

*United States v. Bernard*,
    623 F.2d 551 (9th Cir. 1979) .......................................................................... 13

*United States v. Lopez*,
   482 F.3d 1067 (9th Cir. 2007)..................................................................... 13

*United States v. Moore*,
   483 F.2d 1351 (9th Cir. 1973)..................................................................... 16

*United States v. Struckman*,
   603 F.3d 731 (9th Cir. 2010)....................................................................... 12

*United States v. Thornton*,
   710 F.2d 513 (9th Cir. 1983)....................................................................... 13

*United States v. Wilson*,
   838 F.2d 1081 (9th Cir. 1988)..................................................................... 14

*Washington v. Lambert*,
   98 F.3d 1181 (9th Cir. 1996)......................................................................... 5

*Whren v. United States*,
   517 U.S. 806 (1996) ................................................................................... 13

*Young v. County of Los Angeles*,
   655 F.3d 1156 (9th Cir. 2011)..................................................................... 20

**California Cases**

*Bender v County of Los Angeles*,
   217 Cal. App. 4th 968 (2013) .............................................................. 22, 23

*Cervantez v. J.C. Penney Co.*,
   24 Cal. 3d 579 (1979) ................................................................................ 21

*In re Muhammed C.*,
   95 Cal. App. 4th 1325 (2002) ..................................................................... 18

*Jackson v. Superior Court*,
   98 Cal. App. 2d 183 (1950).......................................................................... 18

*Jones v. Kmart Corp.*,
   17 Cal. 4th 329 (1998) ............................................................................... 21

*Levin v. United Air Lines, Inc.*,
   158 Cal. App. 4th 1002 (2008) ................................................................... 21

*People v. Curtis*,
   70 Cal. 2d 347 (1969) ................................................................................ 18

*People v. Green*,
228 Cal. App. 2d 437 (1964) ................................................................ 15

*People v. Wilkinson*,
248 Cal. App. 2d Supp. 906 (1967) ....................................................... 16

*Shoyoye v. County of Los Angeles*,
203 Cal. App. 4th 947 (2012) ......................................................... 22, 23

*Simmons v. Superior Court*,
7 Cal. App. 5th 1113 (2016) .......................................................... 23, 24

*Venegas v. County of Los Angeles*,
153 Cal. App. 4th 1230 (2007) ............................................................. 21

*Venegas v. County of Los Angeles*,
32 Cal. 4th 820 (2004) ............................................................... 22, 23

## California Statutes

California Civil Code § 52.1 ................................................................. 20

California Civil Code § 52.1(b) ............................................................. 21

California Government Code § 815.2 ................................................... 21, 24

California Penal Code § 148(a) ................................................. 1, 12, 13, 20

California Penal Code § 148(a)(1) ...................................................... 10, 18, 20

California Penal Code § 459 ......................................................... passim

California Penal Code § 460 ......................................................... passim

California Penal Code § 460(a) ............................................................. 15

California Penal Code § 460(b) .............................................................. 9

California Penal Code § 461(a) ............................................................. 15

California Penal Code § 461(b) ............................................................. 15

California Penal Code § 602(m) ..................................................... passim

## Federal Rules

Federal Rule of Civil Procedure 56(a) ...................................................... 11

Federal Rule of Civil Procedure 56(c) ...................................................... 11

# <u>Other Authorities</u>

Judicial Council of California Civil Jury Instructions "CACI" No. 1402, *False Arrest Without Warrant—Affirmative Defense—Peace Officer—Probable Cause to Arrest*...................... 21

Ninth Circuit Civil Jury Instruction 9.23 (rev'd 11/2016) ............................................................ 12

## I.  INTRODUCTION

This civil rights action arises from the warrantless arrest without probable cause and use of excessive force—in the form of German Shepard *Riggs*, trained to "bite and hold"—against sixty-two-year-old Richard May at a fenced-off senior housing construction site in Half Moon Bay, CA.  Mr. May's seventy-three-year-old friend Sharon Coster lived at Lesley Gardens, a senior housing apartment complex next door to a senior housing project construction site.  Mr. May was hooking up Ms. Coster's television in her apartment when Ms. Coster's cat, *Domino*, escaped, and entered the construction site.  Ms. Coster tried calling the 1-800 number on one of the Jatagan Security Company signs on the exterior of the fence, but the number was incorrect, connecting instead to a medical supply company in Ohio, as Defendants later confirmed.  Ms. Coster enlisted Mr. May's help to rescue *Domino*, and they both entered the construction site.

Meanwhile, Jatagan Security provided video surveillance of the site, and one of its employees saw Mr. May, wearing a plaid shirt, and Ms. Coster, wearing all black, on the site and called 911.  Defendants Laughlin, Michel, and Deputy Sanchez responded.  Within two minutes of arriving, they had knocked down a section of fence, entered, seen Mr. May, sicced *Riggs* to bite him for at least 30 seconds, and handcuffed him, allegedly for violating California Penal Code § 459, second degree commercial burglary, either a misdemeanor or felony.  Defendant Laughlin eventually cited Plaintiff only for violating California Penal Code §§ 602(m) (trespass to occupy property) and 148(a) (willfully resisting, obstructing or delaying a peace officer acting in the lawful performance of duties), both misdemeanors.

Because no reasonable jury could find that Defendant Laughlin had probable cause to effect a warrantless, custodial arrest of Mr. May for having violated California Penal Code §§ 459, 460, 602(m), or 148(a), this Court should grant the relief listed above against Defendants Laughlin and San Mateo County.  Plaintiff has not moved for summary judgment on his Fourth Amendment excessive force claim; however, deciding as a matter of law that no probable cause existed to arrest Mr. May for the only felony at issue here, Cal. Penal Code §§ 459 and 460, will streamline trial of the Fourth Amendment excessive force claim by narrowing the "severity of the crime at issue[.]"  *Graham v. Connor*, 490 U.S. 386, 455 (1989).

## II. STATEMENT OF FACTS[1]

### A. San Mateo County Sheriff's Deputies—including Defendants Laughlin and Michel—respond to a report of two to three people, including a person in plaid and a person in black, jumping over the fence of a senior housing project construction site and stacking items near the fence.

Shortly before 11:00 p.m. on January 1, 2015, San Mateo County dispatch advised its deputies of a possible, unconfirmed commercial burglary in progress. (Declaration of T. Kennedy Helm[2], **Ex. A**, Sanchez Dep., 43:18–44:21). "[T]he reporting party was a security firm that was monitoring the suspects via . . . a remote camera and . . . live video feed[,]" and an employee of the security firm, Jatagan Security, provided "updates to dispatch" while Defendant Laughlin drove to the construction site. (**Ex. B**, Laughlin Dep., 76:13–22; 78:1–9). Dispatch reported that the Jatagan employee had seen on the video: "two, possibly three, suspects . . . hopping back and forth over a perimeter fenc[e] and stacking items of property near the fence line." (**Ex. B**, Laughlin Dep., 75:23–76:1). There was no information about what appeared to be stacked by the fence or why anything would be stacked there. *Id*. One of the people wore plaid, and one wore all black. (**Ex. C**, CAD, p. 01880). At some point, dispatch mentioned a third person possibly seen moving between buildings. (**Ex. B**, Laughlin Dep., 78:25–79:5). Deputy Sanchez recalled dispatch mentioning three subjects within the fenced-in area moving objects back and forth. (**Ex. A**, Sanchez Dep., 43:14–44:3).

Importantly, dispatch never mentioned that the Jatagan employee had seen any of the people on the construction site actually steal anything; only that the people were stacking up "property" near the fence line. (**Ex. B**, Laughlin Dep., 79:9–14). Dispatch had not described anyone actually stealing something; rather, dispatch described the persons moving boxes or moving items back and forth towards the fence. (**Ex. A**, Sanchez Dep., 45:16–21). The responding deputies had no specific information that any of the three people were armed or violent. (**Ex. B**, Laughlin Dep., 79:15–18; **Ex. A**, Sanchez Dep., 48:11–15; 48:23–49:2) (*see also* **Ex. C**, CAD, p. 01880, "UNK IF VIOLENT").

---

[1] Since this is Plaintiff's motion for partial summary judgment, the following facts are stated in the light most favorable to Defendants. *Cnty. of Tuolumne v. Sonora Cmty. Hosp.*, 236 F.3d 1148, 1154 (9th Cir. 2001).

[2] All exhibits herein are attached to the Declaration of T. Kennedy Helm in Support of Plaintiff's motion.

At his deposition, Deputy Laughlin admitted his lack of confidence in the Jatagan employee's information that he received, via dispatch, about this alleged in-progress commercial burglary. (**Ex. B**, Laughlin Dep., 78:19–22). Deputy Laughlin lacked familiarity with Jatagan, having never spoken to any of its employees. (**Ex. B**, Laughlin Dep., 78:15–17). Nor did Defendant Laughlin know how sure the Jatagan Security employee was in even seeing somebody on the video moving boxes and stacking them near a fence. (**Ex. B**, Laughlin Dep., 77:17–21). Moreover, Defendant Laughlin himself possessed no independent knowledge about criminal activity at this construction site, having neither responded to a commercial burglary there, nor heard that the site had a history of commercial burglaries. (**Ex. B**, Laughlin Dep., 76:4–9). Consequently, Defendant Laughlin acknowledged that, when he arrived at the construction site, he needed to investigate to ascertain whether a commercial burglary was occurring or had occurred. (**Ex. B**, Laughlin Dep., 78:23–24; 80:10–15). Defendants Laughlin, Michel, and Deputies Sanchez, De Martini, and King all agree that dispatch provided them information about only a *possible* commercial burglary in progress. (**Ex. B**, Laughlin Dep., 80:10–13; **Ex. A**, Sanchez Dep., 44:14–21; **Ex. D**, De Martini Dep., 7:21–23; **Ex. E**, King Dep., 18:25–19:06).

> **B.**     **After Defendant Michel breaks down a section of fence to enter the construction site, Deputy Laughlin spots Mr. May, sees him walk slowly away, and releases *Riggs* to bite and hold him.**

Defendant Laughlin, and Deputies Sanchez and Michel all arrived on scene between 11:00—11:01 p.m. (**Ex. C**, CAD p. 01880; **Ex. A**, Sanchez Dep., 94:17–95:7). Defendant Michel, 6' 6," 290 lbs., pulled down a section of fence so the deputies could enter. (**Ex. F**, Michel Dep., 15:17–24; 70:3–14). Defendants Laughlin and Michel went to the left (north), and Deputy Sanchez went to the right (south). (**Ex. B**, Laughlin Dep., 92:1–5). It was nighttime, and the construction site was dimly lit in some areas and dark in others. (**Ex. B**, Laughlin Dep., 77:22–25). At this point, Defendant Laughlin only wanted to *detain* whomever he found to fill out the sketchy information he had received from Jatagan Security via dispatch:

> Q: What was your intention at that time?
> A: To try to see what the security personnel were describing. They were giving us updates, but their positioning was—**I remember it was kind of confusing.**
> Q: Was your plan to either arrest or detain any person that you found inside of that fence?
> A: **My intention at that time was to get clarity as to what was going on, most likely detain the persons inside and see what they were doing.**

(**Ex. B**, Laughlin Dep., 92:1–14) (emphases added).  Defendant Laughlin realized he needed to investigate further, "to get more statements and clarify exactly what people were doing before I'm going to book them into the county jail for any kind of charges." (**Ex. B**, Laughlin Dep., 92:24–93:4).

Deputy Sanchez saw a person in an "open area," wearing a "gray and white checkered shirt, moving between the fence or moving in the area, in the open area." (**Ex. A**, Sanchez Dep., 59:9–11). The man in plaid (Mr. May) was about 75–100 yards away.  (**Ex. A**, Sanchez Dep., 59:9–11; **Ex. B**, Laughlin Dep. 97:16–21).  Deputy Sanchez got Defendants Laughlin's and Michel's attention.  (**Ex. A**, Sanchez Dep., 60:4–5).  Deputy Laughlin saw the man in the plaid shirt, holding a flashlight, standing in dim light out in the open, between one of the rear buildings and the fence line.  (**Ex. B**, Laughlin Dep., 95:6–96:16).  After observing the man for seconds, Deputy Laughlin put *Riggs* in the down position.  (**Ex. B**, Laughlin Dep., 96:24–97:21).  Deputy Laughlin intended to detain the man by ordering him to stop, show hands, and get on the ground so that he could be "detained for the burglary offense."  (**Ex. B**, Laughlin Dep., 97:22–98:3).

Defendant Laughlin announced: "Sheriff's canine, stop right there, show me your hands, get on the ground or you're going to get bit by the dog." (**Ex. B**, Laughlin Dep., 100:25–101:5).  Defendant Laughlin did not know if Mr. May had heard this first announcement and knew that sometimes it can be difficult for a person to hear the announcement.  (**Ex. B**, Laughlin Dep., 101:9–10; 127:10–13).

According to Defendant Laughlin, upon uttering the first announcement, Mr. May "[p]retty much right away" began to move into the shadows, right next to the fence line; as soon as Mr. May did so, and Deputy Laughlin lost sight of him, Deputy Laughlin sent Riggs to bite him.  (**Ex. B**, Laughlin Dep., 101:11–15, 102:7–17).  Deputy Laughlin waited 5–30 seconds before sending Riggs to bite Mr. May.  (**Ex. B**, Laughlin Dep., 101:16–102:6). Defendant Laughlin "took him moving back into the shadows as basically being disobedient of the command and trying to go toward the fence, which was described by the reporting parties as an entrance/exit." (**Ex. B**, Laughlin Dep., 102:22–103:2).  At this point, Deputy Sanchez still had not seen any evidence of a burglary.  (**Ex. A**, Sanchez Dep., 65:19–24).

1

2

    **C.**    **Pursuant to Defendant San Mateo County Sheriff's Office's Canine Services Unit Manual, Defendant Laughlin knew that he needed probable cause to believe Mr. May had committed a serious or violent felony, and he had been trained on the elements of burglary since the police academy.**

3

Defendant San Mateo County Sheriff's Office's Canine Manual provides:

4

5

    Deploying a canine to search for, or attempt apprehension of a suspect constitutes use of force. As such, it is subject to General Order 5-01 as well as this manual.  Canine teams shall only use that degree of force that is reasonably necessary to apprehend or secure a suspect.  **A canine may be deployed to locate and apprehend a suspect if the handler reasonably believes that the individual has committed, or threatened to commit, a serious or violent felony and any of the following conditions exist**:

6

7

8

9

    1. There is a reasonable belief that the individual poses an immediate threat of death or serious bodily harm to the public, another officer or to the handler.

10

    2. The individual is physically resisting or threatening to resist arrest, and such resistance would likely result in death or serious bodily injury to the public, another officer, or to the handler, and the use of the canine reasonably appears necessary to overcome such resistance.

11

12

    3. The individual is believed concealed in an area where entry by any means reasonably available, other than a canine, would pose a threat to the safety of the public, another officer, or to the handler.

13

14

(**Ex. G**, San Mateo County Sheriff's Office Canine Services Unit Manual, pp. 00280–00281)

15

(emphasis added).  Deputy Laughlin agreed that this manual required him, when he decides whether to

16

deploy his dog to bite someone, to have probable cause that the person is committing a serious or

17

violent felony.  (**Ex. B**, Laughlin Dep., 67:20–68:5).[3]  Defendant Laughlin also agreed that the manual

18

does not allow him to send his dog to bite someone whom Defendant Laughlin is just going to briefly

19

detain to investigate if the person is committing a crime.  (**Ex. B**, Laughlin Dep., 68:7–12).

20

    Defendant Laughlin had been trained that "[p]robable cause for arrest is a set of facts that

21

would cause a person of ordinary care and prudence to entertain an honest and strong belief that the

22

person to be arrested is guilty of a crime."  (**Ex. B**, Laughlin Dep., 47:2–11) (citing POST Learning

23

24

———————————————

25

[3] Defendant Laughlin's admissions are properly considered when evaluating the lawfulness of his

26

seizure of Mr. May.  *See Washington v. Lambert*, 98 F.3d 1181, 1184 n.7 (9th Cir. 1996) (officers' admissions that they lacked probable cause to arrest the plaintiffs were admissible and binding on

27

defendants for Fourth Amendment arrest claim); *Green v. City & Cnty. of S.F.*, 751 F.3d 1039, 1049 (9th Cir. 2014) (Officer's admission that he lacked probable cause supports triable question of fact as

28

to false arrest claim).

Domain 15, p. 4-3 (**Ex. H**)). He further agreed that probable cause exists "when, under all the circumstances know to the officer at the time, there is a fair probability that the person has committed a crime." (**Ex. B**, Laughlin Dep., 45:17–21).

Deputy Laughlin agreed that any time he arrests someone, he needs to know the elements of the Penal Code crime for which he is arresting the person, and he must have probable cause for the elements of the crime. (**Ex. B**, Laughlin Dep., 50:21–25; 51:1–6). Since the police academy, Defendant Laughlin had not been trained on, nor was he familiar with the difference between, first and second degree burglary. (**Ex. B**, Laughlin Dep., 81:19–82:3).

Deputy Laughlin agreed that, to enforce the commercial burglary law (or any law), he needed to know the crime's elements. (**Ex. B**, Laughlin Dep., 83:2–16). He agreed that to lawfully arrest for commercial burglary, he needed probable cause that: (1) the person had entered some sort of building or structure with (2) the intent to commit petty or grand theft. (**Ex. B**, Laughlin Dep., 86:12–20; 87:3–13). This is essentially what police officers in California are trained in the police academy:

> For the crime of burglary to be complete, it must be shown that the burglar entered the building or structure for the purpose of committing grand theft, petty theft, or some other felony offense (e.g., assault, rape, mayhem, arson, murder, et cetera). Without this specific intent, the individual may have committed a different crime, such as unauthorized entrance or trespass, *but* not burglary.

(**Ex. I**, POST Learning Domain 6, p. 1-30 (emphasis in original))

Defendant Laughlin knew that probable cause to arrest for burglary requires some evidence that a person entered a building or structure with the intent to steal or commit a felony. (**Ex. B**, Laughlin Dep., 168:8–13). Yet Defendant Laughlin admitted that, before sending *Riggs* to bite Mr. May, Defendant Laughlin had no specific information that the man in the plaid shirt had ever entered any building or structure on the construction site:

> Q: So you had no specific information that Mr. May had ever entered any building or structure on that site before you sent the dog over to bite him; is that right?
> A: That's correct.

(**Ex. B**, Laughlin Dep., 169:5–8). Deputy Laughlin admitted that when he first saw Mr. May, he was standing *outside* of any structure; that he never saw the man in the plaid shirt enter any building, and that he could not remember if the CAD mentioned that the man in the plaid shirt ever entered a

building.  (**Ex. B**, Laughlin Dep., 99:14–16; 100:15–23).  Similarly, when Deputy Sanchez saw Mr. May, he was not in any building.  (**Ex. A**, Sanchez Dep., 68:18–20).  Indeed, at no point did Deputy Laughlin—or any one else—ever see the man in the plaid shirt go inside any of the buildings on the construction site.  (**Ex. B**, Laughlin Dep., 93:22–94:7; 100:15–23; 171:23–172:23; **Ex A**, Sanchez Dep., 78:15–23; **Ex. J**, Duri Dep., 44:18–45:3; **Ex. K**, Ramos Dep., 63:15–23; 65:15–19; 74:7–10; 76:1–11).

Defendant Laughlin also knew he needed probable cause to believe that the person's intent, *while inside the building*, was to steal or to commit a felony.  (**Ex. B**, Laughlin Dep., 94:8–13; 167:4–168:1, 8–13).  Indeed, Defendant Laughlin agreed that he had learned, beginning at the police academy, that to establish probable cause for burglary, he needed facts regarding entry and felonious intent: that the person "entered the building or structure for the purpose of committing . . . [a] felony offense."(**Ex. I**, LD 6, p. 1-30); (**Ex. B**, Laughlin Dep. 165:25–168:13).  Defendant Laughlin, however, ignored or refused to follow this training.  When asked whether he was aware of this basic training, including regarding the felonious intent element, to determine if he had probable cause to arrest Mr. May by ordering his dog to bite and hold him, Deputy Laughlin testified: "Was that going through my head during the course prior to my deployment?  Absolutely not."  (**Ex. B**, Laughlin Dep., 165:25–166:25).

Nevertheless, at the moment Defendant Laughlin sicced *Riggs* to bite and hold Mr. May, Defendant Laughlin believed he had probable cause to arrest him for commercial burglary.  (**Ex. B**, Laughlin Dep., 98:4–15).  Defendant Laughlin based his probable-cause determination on the following facts:

> Q:  . . . [A]t the moment that you ended up releasing the dog to apprehend him.
> A: Yes.
> Q: Did you have probable cause to arrest him?
> A: Yes.
> Q: What was that based on?
> A: It's based on the reporting party's information.  Obviously I don't have time to verify that.  It's an in-progress burglary.  That's based on my observations of a person dressed in dark clothing with a flashlight standing near a point of entrance/exit.
> ---
> Q: And what was the information . . . conveyed to you by dispatch that you are saying formed part of your probable cause to arrest for commercial burglary at that point?
> A: So the call, as I remember, was two to three—two, possibly three, suspects seen entering over a fence into the commercial lot, and then picking up items and stacking them near the

fence line . . . That right there leads me to believe, in my mind, that there's a good chance a commercial burglary is occurring.

(**Ex. B**, Laughlin Dep., 99:3–13; 100:1–14).  Despite having no facts either about Mr. May having entered a building or about his felonious intent, Defendant Laughlin commanded *Riggs* to attack using the German word "*FASS!*," meaning "Attack!  Take Hold!" [4]  The German Shepard ran ahead of Defendants Laughlin, with Deputy Laughlin following and the other deputies following him.  (**Ex. B**, Laughlin Dep., 107:3–10).  Defendant Laughlin saw *Riggs* run up and jump on Mr. May; then, Defendant Laughlin called *Riggs* back to him and Deputy Laughlin gave Mr. May one to two more orders: "'Show hands, get on the ground, the dog is going to bite you.'"  (**Ex. B**, Laughlin Dep., 107:11–14).[5]

At this point, Deputy Laughlin could see Mr. May, who was standing a few steps away from the fence line, about a car length away from Deputy Laughlin.  (**Ex. B**, Laughlin Dep., 107:15–22).  Mr. May was "backing up towards the fence line" away from Deputy Laughlin, but with Mr. May's body facing Deputy Laughlin.  (**Ex. B**, Laughlin Dep., 111:2–22).  Defendant Laughlin never saw Mr. May do anything other than "standing up and moving slowly."  (**Ex. B**, Laughlin Dep., 125:24–126:1).  When Mr. May was a couple steps away from the fence, Deputy Laughlin for the second time commanded *Riggs* to *FASS!*  (**Ex. B**, Laughlin Dep., 111:23–25).  Upon giving this second *FASS* command, *Riggs* ran and bit Mr. May on his right leg.  (**Ex. B**, Laughlin Dep. 114:18–22).

Then, Defendant Laughlin ran up to Mr. May, grabbed his arm, pulled him to the ground, and began commanding him to put his arms out.  (**Ex. B**, Laughlin Dep., 114:24–115:2).  Defendant Laughlin remembered "being able to pull him to the ground pretty easy."  (**Ex. B**, Laughlin Dep., 116:13–16).  *Riggs* continued to bite Mr. May, because as Defendant Laughlin explained, *Riggs* is "a bite-and-hold dog, so he's going to bite and hold that position until I command him off."  (**Ex. B**, Laughlin Dep., 116:17–23).  According to Defendant Laughlin, *Riggs* continued to bite Mr. May for

---

[4] *See* http://germandogtrainingcenter.com/schutzhund-training-commands/.

[5] Mr. May never heard any warning, or anything other than some command in a foreign language, before the dog attacked him.  (**Ex. L**, May Dep., 76:3–77:17; 78:15–79:1).  Neither did Sharon Coster, standing about 20 feet away from May, or other officers nearby.  (**Ex. M**, Coster Dep., 23:17–24; **Ex. E**, King Dep., 14:11–18; **Ex. N**, Loubal Dep., 14:22–15:7; **Ex. O**, Zeugin Dep., 10:13–15).

about 15–20 seconds; to Mr. May, it seemed like "minutes." (**Ex. B**, Laughlin Dep., 117:5–17; **Ex. L**, May Dep., 81:23–24). Eventually, Defendant Laughlin instructed *Riggs* to *Aus*, or stop biting Mr. May; Defendant Laughlin got *Riggs* off of Mr. May, moved back several feet, and told Defendant Michel to handcuff him. (**Ex. B**, Laughlin Dep., 119:6–12). Defendant Michel handcuffed Mr. May without any difficulty. (**Ex. B**, Laughlin Dep., 119:16–18).

Defendant Laughlin admits he was the arresting officer. (**Ex. B**, Laughlin Dep., 122:20–21). By the time Mr. May was on the ground, he was under arrest for "commercial burg[,]" in violation of California Penal Code § 460(b). (**Ex. B**, Laughlin Dep., 121:24–122:12, 22–25). Penal Code § 460(b) is second degree commercial burglary as defined by §§ 459 and 460(b), a property crime. *Id.* Defendant Laughlin had no crime in mind other than Pen. Code §§ 459, 460 for which to arrest Mr. May. (**Ex. B**, Laughlin Dep., 126:4–12).

Then, Defendant Michel escorted Mr. May to the front of the construction site to receive medical care while Defendant Laughlin, *Riggs*, and Deputies Sanchez and King searched the buildings for a third suspect. (**Ex. B**, Laughlin Dep., 119:19–120:1). It is undisputed that no third suspect was ever found. Defendant Laughlin did not investigate to see if a commercial burglary had occurred. (**Ex. B**, Laughlin Dep., 130:18–21). Deputy Sanchez later investigated, but could not determine if either Mr. May or Ms. Coster had stacked up anything anywhere. (**Ex. A**, Sanchez Dep., 79:24–80:21).

Although at about 11:03 a.m.—only *two minutes* after officers radioed in their arrival on scene—Mr. May was "in cuffs," Defendant Laughlin did not transport him to the San Mateo Medical Center ("CHOPE") emergency room until 1:14 a.m., about two hours later. (**Ex. C**, CAD, p. 01883; **Ex. B**, Laughlin Dep., 179:25–180:2). At about 12:02 a.m., Defendant Laughlin pulled the case number "SOS 15-00012," and listed two charges: [Cal. Penal Code §§] "460" and an additional charge: "148." (**Ex. C**, CAD, p. 01883). Defendant Laughlin spent some of these two hours interrogating Mr. May and Ms. Coster at the Half Moon Bay Substation, audio recording both. After *Mirandizing* Mr. May, Defendant Laughlin lied to him, stating: "When you enter into someone's private property that's fenced in, it's going to count as commercial burglary, ok?" (**Ex. B**, Laughlin Dep., 146:25–147:4). Defendant Laughlin admitted that entering on someone's fenced-in property does not count as commercial burglary, conceding "[w]e discussed the elements of burglary. I'm

aware there's more elements." (**Ex. B**, Laughlin Dep., 148:8–21).  Defendant Laughlin also "might

have" lied to Ms. Coster during her interrogation, falsely telling her that the reason for the fencing

around the site was because "numerous people have burglarized it." (**Ex. B**, Laughlin Dep., 152:18–

24).  When asked why he would have told her that, Defendant Laughlin testified:

> Q: Well, assuming that's what you told her, if you think you might have and there's a
> recording of it, why would you have told her numerous people had burglarized it when
> you've told us you had no information of any prior burglaries there?
> A: Maybe it was a ruse.  Maybe I was trying to get a statement out of her.  Maybe I was
> trying to get her to admit to stacking the items near the fence line as described.  I
> couldn't tell you.
> Q: What's a ruse?
> A: It's just a—I guess you can call it misinformation to try to get a statement out of
> somebody.
> Q: It's a lie, right?
> A: Don't know if I call it a lie.  I just call it misinformation.  That's what I call it.  You can
> call it what you want.

(**Ex B.**, Laughlin Dep., 152:25–153:16).  Both Mr. May and Ms. Coster confirmed that they had indeed

just been looking for her cat.  (**Ex. B**, Laughlin Dep., 153:17–24).

Before taking Mr. May to the hospital, Defendant Laughlin cited Mr. May for two

misdemeanors: trespass, in violation of California Penal Code § 602(m); and resisting, obstructing, or

delaying a law enforcement officer in the lawful performance of his duties, in violation of California

Penal Code § 148(a)(1).  (**Ex. B**, Laughlin Dep., 158:13–20).  Defendant Laughlin knew that §

148(a)(1) required that Mr. May's resistance be willful.  (**Ex. B**, Laughlin Dep., 158:21–159:8).  And,

he knew that § 148(a)(1) required the officer to be acting lawfully at the time.  (**Ex. B**, Laughlin Dep.,

158:21–159:8).

Defendant Laughlin agreed, as he wrote in his report, that at the conclusion of his investigation,

he "found little evidence of a commercial burglary having occurred." (**Ex. B**, Laughlin Dep., 174:2–

7).  The deputies found no stolen property stacked up to haul away as Jatagan Security had implied.

(**Ex. B**, Laughlin Dep., 174:8–14).

Mr. May's bite wounds were serious.  (**Ex. J**, Duri Dep., 46:11–47:14; **Ex. P**, Plaintiff's bite

wound photos).  The wounds required multiple doctor visits during 2015.  (**Ex. L**, May Dep., 119:19–

122:21)

The San Mateo County District Attorney declined to file any charges against Mr. May.  (**Ex. Q**, San Mateo County Deputy District Attorney Jacquelyn Gauthier's memo to Defendant Laughlin, 01/22/2015).

### III.        STANDARD OF REVIEW

A party may move for summary judgment by "identifying each claim or defense—*or the part of each claim* or defense—on which summary judgment is sought."  Fed. R. Civ. P. 56(a) (emphasis added).  Summary judgment is appropriate when there is no genuine dispute as to material facts and the moving party is entitled to judgment as a matter of law.  *Id.*  Material facts are those that may affect the outcome of the case.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute as to a material fact is "genuine" if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party.  *Id.*  The court may not weigh the evidence and must view the evidence in the light most favorable to the nonmoving party.  *Id.* at 255.

A party seeking summary judgment bears the initial burden of informing the court of the basis for its motion, and of identifying those portions of the pleadings and discovery responses that demonstrate the absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

Where the moving party will have the burden of proof at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party.  *Id.* at 322–23.  However, on an issue for which its opponent will have the burden of proof at trial, the moving party can prevail merely by "pointing out to the District Court . . . that there is an absence of evidence to support the nonmoving party's case."  *Id.* at 325.  If the moving party meets its initial burden, the opposing party must then "set forth specific facts showing that there is a genuine issue for trial" in order to defeat the motion.  Fed. R. Civ. P. 56(c); *Anderson*, 477 U.S. at 250.

Granting Plaintiff summary judgment regarding the existence of probable cause as to one or more crimes "is appropriate only if no reasonable jury could find that the officers did or did not have probable cause to arrest."  *McKenzie v. Lamb*, 738 F.2d 1005, 1008 (9th Cir. 1984).  Because Plaintiff is the movant, this Court should consider the record in the light most favorable to Defendant Laughlin.  *Id.*

1   No reasonable jury could find that Defendant Laughlin had probable cause to effect Mr. May's

2   warrantless arrest for California Penal Code §§ 459, 460, 602(m), or 148(a).  *See McKenzie*, 738 F.2d

3   at 1008 ("[T]here is no basis on this record for a trier of fact to conclude that there was probable cause

4   to arrest the appellants for a felony.").  And, Defendant Laughlin cannot meet his burden of production

5   to show otherwise at trial.[6]

6   **IV. ARGUMENT**

7      **A.    Based on the facts known to Defendant Laughlin—the arresting officer—at the
            time of the arrest, no reasonable jury could find that probable cause existed to
8            arrest Mr. May for burglary, Cal. Penal Code §§ 459, 460; trespass, Cal. Penal
            Code § 602(m); or resisting arrest, Cal. Penal Code § 148(a).**

9      "To establish § 1983 liability, a plaintiff must show both (1) deprivation of a right secured by

10  the Constitution and laws of the United States, and (2) that the deprivation was committed by a person

11  acting under color of state law."  *Chudacoff v. Univ. Med. Ctr. of S. Nev.*, 649 F.3d 1143, 1149 (9th

12  Cir. 2011).  Because Defendant Laughlin admitted that he acted under color of law during his

13  encounter with Mr. May, (*See* Answer, Doc. 45, ¶ 13), Mr. May need only prove that Defendant

14  Laughlin deprived him of his Fourth Amendment right to be free from unreasonable searches and

15  seizures.  "A claim for unlawful arrest is cognizable under § 1983 as a violation of the Fourth

16  Amendment, provided the arrest was without probable cause or other justification."  *Dubner*, 266 F.3d

17  at 964.

18     "'Probable cause' exists when, under all of the circumstances known to the officer[s] at the

19  time, an objectively reasonable police officer would conclude there is a fair probability that the

20  plaintiff has committed or was committing a crime."  Ninth Cir. Civil Jury Instruction 9.23 (rev'd

21  11/2016) (citing, *inter alia*, *United States v. Struckman*, 603 F.3d 731, 739 (9th Cir. 2010)).  It is well

22  

——————————————

23  [6] At trial, although Mr. May bears the burden of proof on the issue of unlawful arrest, "[he] can

24  make a prima facie case simply by showing that the arrest was conducted without a valid warrant.  At
    that point, the burden shifts to the defendant to prove some evidence that the arresting officers had

25  probable cause for a warrantless arrest.  The plaintiff still has the ultimate burden of proof, but the
    burden of production falls on the defendant."  *Dubner v. City & Cnty. of S.F.*, 266 F.3d 959, 965 (9th

26  Cir. 2001) (citing *Gilker v. Baker*, 576 F.2d 245, 246 (9th Cir. 1978)).  Then, "[i]f the defendant is
    unable or refuses to come forward with any evidence that the arresting officer[ ] had probable cause

27  and the plaintiff's own testimony does not establish it, the court should *presume the arrest was
    unlawful*."  *Dubner*, 266 F.3d at 964 (emphasis added).

28

established that under the Fourth Amendment, "to arrest a suspect on probable cause, the 'facts and circumstances within the officer's knowledge [must be] sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing or is about to commit an offense.'" *Moreno v. Baca*, 431 F.3d 633, 639 (9th Cir. 2005) (alteration in original) (quoting *Michigan v. DeFillippo*, 443 U.S. 31, 37 (1979)).

Probable cause must be based on trustworthy information, **particularized to the person** to be arrested. *United States v. Lopez*, 482 F.3d 1067, 1072 (9th Cir. 2007) (citing *Beck v. Ohio*, 379 U.S. 89, 91 (1964)). "While conclusive evidence of guilt is of course not necessary under this standard to establish probable cause, '[m]ere suspicion, common rumor, or even strong reason to suspect are not enough.'" *Lopez*, 482 F.3d at 1067 (quoting *McKenzie*, 738 F.2d at 1008).

Whether probable cause exists depends on the reasonable conclusion to be drawn from the facts that the arresting officer knows at the time of the arrest, and his subjective reason for making the arrest does not matter. *See Devenpeck v. Alford*, 543 U.S. 146, 153 (2004) ("Our cases make clear that an arresting officer's state of mind (except for the facts that he knows) is irrelevant to the existence of probable cause . . . [H]is subjective reason for making the arrest need not be the criminal offense as to which the known facts provide probable cause.") (citations omitted); *Whren v. United States*, 517 U.S. 806, 812–14 (1996); *see also United States v. Thornton*, 710 F.2d 513, 514 (9th Cir. 1983) (citing *United States v. Bernard*, 623 F.2d 551, 558–59 (9th Cir. 1979) ("All facts known to the arresting officer and all reasonable inferences that could be drawn are considered.")).

Here, Defendant Laughlin was the arresting officer, and he had *no facts* relayed to him—or that he established through any investigation of his own—to establish probable cause for either element of burglary under California Penal Code §§ 459–460; or trespass, under California Penal Code § 602(m); or resisting arrest, under California Penal Code § 148. No reasonable jury could find that Defendant Laughlin had probable cause to arrest Plaintiff May for any of these crimes, or any other crime, because he did not have sufficient information from other sources to arrest Mr. May, and he failed to investigate to establish probable cause before arresting Mr. May.

1      **1.   Clearly established Ninth Circuit precedent requires law enforcement officers to establish probable cause through pre-arrest investigation, which Defendant Laughlin failed to do.**

2

3           Where, as here, law enforcement officers receive sketchy information about what is occurring

4      at a location to which they are responding, clearly established Ninth Circuit precedent requires them to

5      investigate—by, for example, making observations or detaining a person found on site and questioning

6      him. *See Lacey v. Maricopa Cnty.*, 693 F.3d 896, 924 (9th Cir. 2012) (en banc) (quoting *Motley v.*

7      *Parks*, 432 F.3d 1072, 1081 (9th Cir. 2005) (en banc) ("Officers 'have an ongoing duty to make

8      appropriate inquiries regarding the facts received or to further investigate **if insufficient details are**

9      **relayed**.'") (emphasis added); *see also Mendocino Evtl. Ctr. v. Mendocino Cnty.*, 192 F.3d 1283, 1293

10     n.16 (9th Cir. 1999) (holding that even where a police officer relies on information obtained from

11     fellow law enforcement officers, "this in no way negates a police officer's duty to reasonably inquire

12     or investigate these reported facts.  We have denied qualified immunity to police officers who had

13     indisputably relied on information obtained from other law enforcement officials, when we concluded

       that they violated their duty to conduct further investigation.") (citations omitted).

14

15          Further, where, as here, a law enforcement officer only has the report of a citizen witness, the

16     officer cannot solely rely on the citizen witness to establish probable cause to arrest.  *See Hopkins v.*

17     *Bonvicino*, 573 F.3d 752, 767 (9th Cir. 2009), *cert. denied*, 130 S. Ct. 2342 (2010) (quoting *Arpin v.*

18     *Santa Clara Valley Transp. Agency*, 261 F.3d 912, 925 (9th Cir. 2001)  ("This court has held that '[i]n

19     establishing probable cause, **officers may not solely rely on the claim of a citizen witness that [s]he**

20     **was a victim of a crime, but must independently investigate the basis of the witness' knowledge**

21     **or interview other witnesses**.'") (emphasis added); *see also Fuller v. M.G. Jewelry*, 950 F.2d 1437,

22     1444 (9th Cir. 1991) ("[P]olice officers ha[ve] a duty to conduct an investigation into the basis of [a]

       witness' report").

23

24          "Indeed, it is inimical to the fourth amendment for the police to arrest now, and investigate later

25     for probable cause." *Kanekoa v. Honolulu*, 879 F.2d 607, 612 (9th Cir. 1989) (citing *Gerstein v. Pugh*,

26     420 U.S. 103, 120 n.21 (1975); *Mallory v. United States*, 354 U.S. 449, 454 (1957); *United States v.*

       *Wilson*, 838 F.2d 1081, 1085 (9th Cir. 1988)).

27

28

Yet Defendant Laughlin, the arresting officer, did just that: he arrested Mr. May, and *then* he attempted to establish probable cause for the burglary arrest he had already made by post-arrest interrogation of Mr. May at the Half Moon Bay Substation.  Deputy Laughlin only ever had a questionable, second-hand, remote witness' report: a Jatagan Security's employee watching via a video feed from an office in Sacramento.  Deputy Laughlin unreasonably failed to conduct the required investigation to determine probable cause, and no reasonable fact finder could find otherwise.  Instead, as Deputies King and Sanchez testified, the investigation regarding burglary occurred *after* Defendant Laughlin arrested Plaintiff May, and in fact easily demonstrated that no burglary had occurred.

**2.   No reasonable jury could find that Defendant Laughlin had any facts constituting probable cause for either element of California Penal Code § 459 so as to lawfully arrest Mr. May for commercial burglary.**

California Penal Code § 459, the commercial burglary statute, provides in pertinent part that "[e]very person who enters any house, room, apartment, tenement, shop, warehouse . . . or other building . . . with intent to commit grand or petit larceny or any felony is guilty of burglary."  Cal. Penal Code § 459.[7]

As discussed above, Defendant Laughlin, the arresting officer, had absolutely no facts to satisfy the first element of burglary: that Mr. May *entered a structure*.  Cal. Penal Code § 459.  Nor did Defendant Laughlin have any facts to establish the second required element of burglary: that Mr. May entered a building with the intent to commit a felony.  "Specific intent is an essential element of burglary."  *People v. Green*, 228 Cal. App. 2d 437, 439 (1964) (citing Cal. Penal Code § 459).  And, "when specific intent is a required element of the offense, **the arresting officer must have probable**

---

[7] California Penal Code § 459 proscribes commercial burglary, which is second degree burglary. California Penal Code § 460(a) provides in pertinent part that "[e]very burglary of an inhabited dwelling . . . which is inhabited and designed for habitation . . . is burglary of the first degree. . . All other kinds of burglary are of the second degree."  Cal. Penal Code § 460(a)–(b).  First-degree burglary, Cal. Penal Code § 460(a), is a felony, punishable "by imprisonment in the state prison for two, four, or six years."  Cal. Penal Code § 461(a).  Second-degree burglary, Cal. Penal Code § 460(b), can be a misdemeanor, punishable "by imprisonment in the county jail not exceeding one year or pursuant to subdivision (h) of Section 1170."  Cal. Penal Code § 461(b).  Second degree burglary is a known among law enforcement officers as a "wobbler," meaning that it can be charged either as a misdemeanor or as a felony.  (**Ex. J**, Duri Dep., 24:9–18; **Ex. B**, Laughlin Dep., 122:13–19).

**cause for that element** in order to reasonably believe that a crime has occurred." *Gasho v. United States*, 39 F.3d 1420, 1428 (9th Cir. 1994), *cert. denied*, 115 S. Ct. 2852 (1995) (citing *Kennedy v. L.A. Police Dep't*, 901 F.2d 702, 705 (9th Cir. 1989) (emphasis added)).  Indeed, "it is a matter of common sense that before arresting a person for taking property . . . an officer should reasonably believe that the person **intends to steal**." *Gasho*, 39 F.3d at 1429, n.8 (emphasis added).  Consequently, "[w]hen specific intent is an element of the alleged offense, 'part of the probable cause analysis **must be** whether the officer [] could believe that [the person arrested] **had the necessary intent**.'" *Gasho*, 39 F.3d at 1429 (quoting *Kennedy*, 901 F.2d at 705) (emphasis added).  Indeed, "**'[p]robable cause is lacking if the circumstances relied on are 'susceptible to a variety of credible interpretations not necessarily compatible with nefarious activities.'''** *Gasho*, 39 F.3d at 1432 (quoting *United States v. Moore*, 483 F.2d 1351, 1363 (9th Cir. 1973)) (emphasis added).

Yet Defendant Laughlin never received any facts about Mr. May's intent to commit a burglary while he was en route to the construction site, nor did he ascertain any facts before arresting Mr. May.  A reasonable officer would have obtained more information to establish probable cause to arrest based on the person's intent.  Instead of detaining Mr. May and asking him what he was doing on the construction site to elicit Mr. May's specific intent (or lack thereof), Defendant Laughlin forcefully arrested him.

> ### 3. No reasonable jury could find that Defendant Laughlin had any facts constituting probable cause to believe that Mr. May had committed trespass in violation of California Penal Code § 602(m), a misdemeanor, because he had no facts to satisfy the 'occupying' element.

California Penal Code § 602 provides that "every person who willfully commits a trespass by any of the following acts is guilty of a misdemeanor: . . .(m) [e]ntering and occupying real property or structures of any kind without the consent of the owner, the owner's agent, or the person in lawful possession."  Cal. Penal Code § 602(m).  Like burglary, this too is a specific-intent crime, requiring proof of the arrestee's intent to occupy the real property or structure—as a squatter would.  *See People v. Wilkinson*, 248 Cal. App. 2d Supp. 906, 908 (1967) (holding that Cal. Penal Code § 602(m), then

numbered 602(l), required the specific "inten[t] to remain permanently, or until ousted, or in fact for any longer than just one night's sleeping out encampment.")[8].

Although Defendant Laughlin claimed to know the elements of § 602 (m) from having arrested people under this section before, when he cited Mr. May for trespass in violation of § 602(m), he failed to review the statute to make sure that he had probable cause for the arrest.  (**Ex. B**, Laughlin Dep., 159:18–160:6).  California POST trains officers as follows regarding trespass: "[t]he crime of entering and occupying real property occurs when a person does not obtain the consent of the owner, the owner's agent, or the person in lawful possession before entering."  (**Ex. I**, POST LD 6, p. 3-4).  As Defendant Laughlin agreed, POST teaches that trespass requires entering *and* occupying real property. (**Ex. B**, Laughlin Dep., 163:20–23).  POST defines "occupation" as "when a person exercises physical control over the land where the land is possessed and enjoyed.  Subjects must actually use, control, and possess the property *over a period of time*, or until they are asked to leave to satisfy the crime elements.  Transient, non-continuous possession is not considered occupation."  (**Ex I**, POST LD 6, p. 3-5).  Defendant Laughlin agreed that this definition of occupation comported with his basic police academy training.  (**Ex. B**, Laughlin Dep., 164:14–16).  Yet he testified:

> Q: Did you forget that an element of trespass was occupation when you cited him for it?
> A: **I don't know what I was thinking.**  I was thinking of trespass.
> Q: And did you realize that when you signed this ticket citing him for trespass, that you
>     were asking the district attorney to institute criminal charges against him?
> A: Yes.

(**Ex. B**, Laughlin Dep., 165:16–19) (emphasis added).

The Deputy District Attorney reviewing this arrest of course noted the lack of any evidence to meet the "occupation" element, and for that very reason declined to prosecute.  (**Ex Q**, DA memo) (". . . we cannot proceed with the 602(m) trespass charge because that section requires occupation, which caselaw dictates is akin to squatting").

No reasonable jury could find that Defendant Laughlin ever had probable cause to believe that Mr. May was "occupying" the construction site.

---

[8] In 2003, the California legislature amended § 602, renumbering 602(l) to 602(m) without changing its substance.  2003 Cal. Legis. Serv. Ch. 805 (S.B. No. 993).

**4. No reasonable jury could find that an officer in Defendant Laughlin's position had probable cause to arrest Mr. May for having violated California Penal Code § 148, because Defendant Laughlin did not have probable cause to arrest Mr. May for California Penal Code §§ 459, 460 (or 602(m)), and he was accordingly not in the lawful performance of his duties when he sicced *Riggs* to apprehend Mr. May.**

An arrest under California Penal Code § 148(a)(1) requires probable cause to believe the following: (1) the defendant willfully resisted, delayed, or obstructed a peace officer; (2) when the officer was engaged in the performance of his or her duties; and (3) the defendant knew or reasonably should have known the other person was a peace officer engaged in the performance of his or her duties. *In re Muhammed C.*, 95 Cal. App. 4th 1325, 1329 (2002) (citing Cal. Penal Code § 148(a)(1)). Element (2), "the lawfulness of the officer's conduct" is "an essential element of the offense of resisting, delaying, or obstructing a peace officer." *Smith v. City of Hemet*, 394 F.3d 689, 695 (9th Cir. 2005) (en banc) (citations omitted). Defendant Laughlin cannot satisfy the *essential* element (2), because when Defendant Laughlin sicced *Riggs* to bite and hold Mr. May, he was not engaged in the lawful performance of his duties, because he had no probable cause or other legal justification to effect a custodial arrest of Mr. May for Cal. Penal Code §§ 459, 460, or 602(m). *See Jackson v. Superior Court*, 98 Cal. App. 2d 183, 189 (1950) ("An officer is under no duty to make an unlawful arrest."); *People v. Curtis*, 70 Cal. 2d 347, 355 (1969) (construing § 148 "as excluding unlawful arrests from its definition of 'duty.'").

**B.     Defendant Laughlin is not entitled to qualified immunity for his unreasonable, mistaken belief that probable cause existed to arrest Mr. May for violating California Penal Code §§ 459, 460, 602(m), and 148.**

"[Q]ualified immunity is an affirmative defense, *Harlow*, 457 U.S. at 815, and the burden of proving the defense lies with the official asserting it." *Houghton v. South*, 965 F.2d 1532, 1536 (9th Cir. 1992) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 815, 819 (1982)). *See also Moreno*, 431 F.3d at 638 (defendant "bears the burden of proof" to establish qualified immunity); *Collins v. Jordan*, 110 F.3d 1363, 1369 (9th Cir. 1997) ("It is the defendant's burden to show that a reasonable . . . officer could have believed, in light of the settled law, that he was not violating a constitutional or statutory right."). (citation and internal quotation marks omitted)).

Unlike other issues in this motion for summary judgment brought by Plaintiff, both steps of the qualified immunity analysis must be done considering the facts in the light most favorable to the

plaintiff.  *Santos v. Gates*, 287 F.3d 846, 855, n.12 (9th Cir. 2002); *Lolli v. Cnty. of Orange*, 351 F.3d 410, 421 (9th Cir. 2003); *see also Beecham v. City of W. Sacramento*, No. Civ. S-07-1115 JAM EFB, 2008 U.S. Dist. LEXIS 85126, at *27 (E.D. Cal. Oct. 22, 2008) (where plaintiffs moved for partial summary judgment as to liability for false arrest and defendants asserted the qualified immunity defense, the Court viewed the facts in the light most favorable to plaintiffs); *Brown v. City & Cnty. of S.F.*, No. C 11-02162 LB, 2014 U.S. Dist. LEXIS 48386, at *48 (N.D. Cal. Apr. 7, 2014) (in analyzing qualified immunity, court resolves disputed issues of fact in plaintiff's favor).

The affirmative defense of qualified immunity has a two-step analysis.  *Pearson v. Callahan*, 129 S. Ct. 808, 818 (2009).  Taking the facts in the light most favorable to the plaintiff, the Court may choose to first determine whether the violation of a constitutional right could be established, or it may choose to first decide whether that right was clearly established at that time under the circumstances. *Id.*; *see also Johnson v. Bay Area Rapid Transit Dist.*, 724 F.3d 1159, 1168 (9th Cir. 2013) ("[T]ypically, taking the facts in the light most favorable to the plaintiffs, we first ask whether those facts demonstrate that the defendant police officers violated one or more of the plaintiffs' constitutional rights.") (citations omitted).

Here, the Fourth Amendment right to be free from a warrantless arrest without probable cause was clearly established.  *See, e.g., Gasho*, 39 F.3d at 1438 ("The Fourth Amendment right to be free from arrests without probable cause is clearly established.") (citation omitted); *Beier v. City of Lewiston*, 354 F.3d 1058, 1065 (9th Cir. 2004) ("That a police officer may arrest a suspect only if he has probable cause to believe a crime has been committed is a bedrock Fourth Amendment precept."). *Rosenbaum v. Washoe Cnty.*, 663 F.3d 1071, 1078 n.2 (9th Cir. 2011) (no objectively reasonable officer could have believed there was probable cause); *Knox v. Sw. Airlines*, 124 F.3d 1103, 1107–08 (9th Cir. 1997) (citing *Kennedy*, 901 F.2d at 706) ("Unsurprisingly, it is clearly established that an arrest without probable cause violates a person's Fourth Amendment rights.").

"To complete the second step of the qualified immunity analysis, we place our hypothetical reasonable officer in the same situation as the defendant police officers, and then ask whether the reasonable officer also would have committed the act that the plaintiffs contend is unconstitutional." *Johnson*, 724 F.3d at 1168.  "If the answer is 'yes,' the defendant officers are entitled to qualified

immunity.  If the answer is "no," the plaintiffs' claim against the defendant officers may proceed." *Id.* (internal citations omitted).  ". . . Fourth Amendment issues [] are evaluated for objective reasonableness based upon the information the officers had when the conduct occurred." *Saucier v. Katz*, 533 U.S. 194, 207 (2001).

To overcome qualified immunity, the exact same violation need not have been previously held unlawful; rather, the contours of the right must be sufficiently clear so that, in light of preexisting law, the unlawfulness of the actions is apparent. *Anderson v. Creighton*, 483 U.S. 635, 640 (1987).  A defendant is not entitled to qualified immunity merely because no prior case prohibits the precise conduct at issue. *Young v. Cnty. of L.A.*, 655 F.3d 1156, 1167 (9th Cir. 2011); *Deorle v. Rutherford*, 272 F.3d 1272, 1285–86 (9th Cir. 2001).  Any requirement that facts of previous cases be "materially similar" to the case at issue is a "rigid gloss on the qualified immunity standard" that is "not consistent with our cases." *Hope v. Pelzer*, 536 U.S. 730, 739 (2002).  The "salient question" is whether the state of the law at the time gave the defendant "fair warning" that his alleged conduct was unconstitutional. *Tolan v. Cotton*, 134 S. Ct. 1861, 1866 (2014) (citing *Hope*, 536 U.S. at 741).

Here, Defendant Laughlin had no information to constitute probable cause to arrest Mr. May for California Penal Code §§ 459, 460, 602(m), or 148.  Since the police academy, Defendant Laughlin had been trained on the probable cause standard, and the elements of § 459, 460, and 602(m), yet he violated his own basic POST training, as he repeatedly admitted at his deposition.  Where, as here, an officer violates his basic police academy training, he has notice that his conduct is unreasonable and therefore cannot claim entitlement to qualified immunity. *See Drummond v. City of Anaheim*, 343 F.3d 1052, 1062 (9th Cir. 2003) (training was relevant to whether force was unlawful and whether a reasonable officer would have been on notice); *Headwaters Forest Def. v. Cnty. of Humboldt ("Headwaters II")*, 276 F.3d 1125, 1131 (9th Cir. 2002) (no qualified immunity where officers violated regional and statewide police protocol).

No reasonable officer in Defendant Laughlin's situation would have believed he had probable cause to arrest Mr. May for having violated California Penal Code §§ 459, 460, 602(m), or 148.

Qualified immunity does not apply at all to state law claims, including false arrest and claims brought under California Civil Code § 52.1 based on violations of federal law. *Venegas v. Cnty. of Los*

*Angeles*, 153 Cal. App. 4th 1230, 1246 (2007).

**C.   By violating Plaintiff's Fourth Amendment right to be free from an arrest without probable cause, Defendant Laughlin is liable for the California state law tort of false arrest, as is Defendant San Mateo County.**

Plaintiff's California false arrest claim is proven by the same wrongful acts that support his § 1983 claim.  *See Blankenhorn v. City of Orange*, 485 F.3d 463, 486–488 (9th Cir. 2007); *Robinson v. Solano Cnty.,* 278 F.3d 1007, 1016–17 (9th Cir. 2002) (en banc) (constitutional violations support state tort claims for false arrest and imprisonment, assault and battery, and negligence, and there is no immunity for such claims).  Unlike Plaintiff's Fourth Amendment claim for unlawful arrest where, with the support of objectively reasonable facts, the existence of probable cause generally is a question of fact, *McKenzie*, 738 F.2d at 1007–08, under California law, the existence of probable cause in a false arrest claim is a question of law.  *See Judicial Council of California Civil Jury Instructions* "CACI" No. 1402, *False Arrest Without Warrant—Affirmative Defense—Peace Officer—Probable Cause to Arrest*; *Levin v. United Air Lines, Inc.*, 158 Cal. App. 4th 1002, 1018–19 (2008).  Further, "[t]he burden is on the defendant to prove justification for the arrest."  *Cervantez v. J.C. Penney Co.*, 24 Cal. 3d 579, 592 (1979); CACI No. 1402.

Here, Defendant Laughlin cannot satisfy his burden to prove the justification for his custodial arrest of Mr. May.  As a result, Defendant San Mateo County is vicariously liable for Defendant Laughlin's false arrest of Mr. May.  *See Robinson*, 278 F.3d at 1016 (citing Cal. Gov't Code § 815.2) (observing that "California, however, has rejected the *Monell* rule and imposes liability on counties under the doctrine of *respondeat superior* for acts of county employees; it grants immunity to counties only where the public employee would also be immune.").

**D.   By falsely arresting Mr. May and siccing *Riggs* to bite and hold him, causing serious injury, Defendant Laughlin violated the Bane Act, incurring his own liability and that of Defendant San Mateo County.**

California Civil Code § 52.1(b), the Bane Act, provides a private right of action for damages against any person who "interferes . . .," or "attempts to interfere by threat, intimidation, or coercion," with the exercise or enjoyment of rights under California or federal law.  Section 52.1 simply requires "an attempted or completed act of interference with a legal right, accompanied by a form of coercion." *Jones v. Kmart Corp.*, 17 Cal. 4th 329, 334 (1998).

Although enacted in response to the increasing incidence of hate crimes in California, "the Bane Act is not limited to hate crimes." *Bender v Cnty. of L.A.*, 217 Cal. App. 4th 968, 977 (2013). Discriminatory animus is not required, *Venegas v. Cnty. of L.A.*, 32 Cal. 4th 820, 841–43 (2004), nor is "violence or threat of violence." *Moreno v. Town of Los Gatos*, 267 F. App'x. 665, 666 (9th Cir. 2008) (citing *Venegas*, 32 Cal. 4th at 841) ("Reading section 52.1 on its own terms, as *Venegas* directs, the statutory language clearly requires only 'threats, intimidation, or coercion.'").[9]

The requirement to show "threat, intimidation, or coercion" is not onerous where police directly violate a person's rights. *See Venegas*, 32 Cal. 4th at 850–51 (Baxter, J., concurring) ("[I]t should not prove difficult to frame many, if not most, asserted violations of any state or federal statutory or constitutional right, including mere technical statutory violations, as incorporating a threatening, coercive, or intimidating verbal or written component.").

Numerous state and federal courts have limited *Shoyoye v. County of Los Angeles*, 203 Cal. App. 4th 947 (2012), to its unique facts,[10] and held that the coercion element may be intrinsic to constitutional violations.[11]

---

[9] In 2014, the statute was amended to replace "threats" with "threat." § 52.1, Notes, 2014 Amendment.

[10] Unlike Defendants' volitional conduct amounting to false arrest—with substantial force from a police canine trained to bite and hold Mr. May—*Shoyoye* arose from a mistakenly prolonged incarceration in a county jail. *Shoyoye*, 203 Cal. App. 4th at 951–53. A clerical error resulted in the plaintiff being held in jail 16 days too long. *Id. Shoyoye* held that the accidentally prolonged incarceration did not automatically satisfy the coercion element of § 52.1, and that plaintiff would have to make a separate showing of coercion. *Id.* at 947.

11 *D.V. v. City of Sunnyvale*, 65 F. Supp. 3d 782, 788 (N.D. Cal. 2014) ("[T]he great weight of authority in the Northern District of California has … confined *Shoyoye* to circumstances involving negligent conduct."); *M.H. v. Cnty. of Alameda*, 90 F. Supp. 3d 889, 898 (N.D. Cal. 2013) ("[T]he relevant distinction for purposes of the Bane Act is between intentional and unintentional conduct, and . . . *Shoyoye* applies only when the conduct is unintentional."); *Bass v. City of Fremont*, No. C12-4943 TEH, 2013 U.S. Dist. LEXIS 32590, at *13–14 (N.D. Cal., Mar. 8, 2013) (rejecting "a broad reading of *Shoyoye*—one that would, perversely, preclude any [Bane Act] action in which the underlying statutory or constitutional violation involved 'threats, intimidation, or coercion'" and finding such a reading "contrary to the plain language of the statute" and contrary to *Venegas*); *Davis v. City of San Jose*, No. 14-CV-02035 BLF, 2014 U.S. Dist. LEXIS 84641, at *24 (N.D. Cal. June 20, 2014) ("However, the [defendants] ignore the wealth of subsequent case law that has limited *Shoyoye* to its narrow circumstances—case law with which this Court agrees."); *Brown*, 2014 U.S. Dist. LEXIS 48386, at *60 ("[T]he court finds persuasive the line of cases permitting Bane Act claims based on the same conduct as an underlying constitutional violation."); *Mateos-Sandoval v. Cnty. of Sonoma*, No.

*Shoyoye* recognized that coercion could be shown in *Venegas*, 32 Cal. 4th 820, for example, because there a jury could find "the probable cause that initially existed to justify stopping the plaintiffs eroded at some point, such that the officers' conduct became intentionally coercive and wrongful." *Shoyoye*, 203 Cal. App. 4th at 961.  In other words, the simple continued arrest of a person after investigation eroded probable cause could constitute coercion that met the *Shoyoye* Court's definition of a "volitional" rather than a "mere negligent" act. *Id.* at 957, 961.

Importantly, after *Shoyoye*, *Bender v. County of Los Angeles,* 217 Cal. App. 4th 968, 978 (2013), held that a false arrest with excessive force clearly violates the Bane Act; and a false arrest ***or*** excessive force, standing alone, may violate the Bane act. *Id.*  And, the Ninth Circuit has held that excessive force alone satisfies all elements of a Bane Act claim.  *See Chaudhry v. City of L.A.*, 751 F.3d 1096, 1105–06 (9th Cir. 2014) (quoting *Cameron v. Craig*, 713 F.3d 1012, 1022 (9th Cir. 2013) ("[T]he elements of the excessive force claim under §52.1 are the same as under § 1983.")).

Further, a California Court of Appeal recently held that even a lawful arrest with probable cause followed by excessive force (a strip search) satisfies the Bane Act.  *See Simmons v. Superior Court*, 7 Cal. App. 5th 1113, 1127 (2016) ("Even assuming the officers had probable cause to arrest Simmons, the complained-of conduct asserted here—multiple nonconsensual, roadside, physical body cavity searches—is necessarily intentional conduct that is separate and independent from a lawful arrest for being in a park after it closed, for riding a bicycle in the dark without a headlight, or for

---

C11-5817 TEH, 2013 U.S. Dist. LEXIS 104549, at *24–27 (N.D. Cal. July 25, 2013) (seizure of vehicle was intentional and inherently coercive, satisfying Bane Act requirements); *Sanchez v. City of Fresno*, No. 1:12-CV-00428-LJO-SKO, 2013 U.S. Dist. LEXIS 68561, at *37 (E.D. Cal. May 14, 2013) (Eastern District adopts analysis of *M.H.* court in Northern District); *Dillman v. Tuolumne Cnty.*, No. 1:13-CV-00404 LJO SKO, 2013 U.S. Dist. LEXIS 65206, at *54–58 (E.D. Cal., May 7, 2013) (same); *Little v. City of Richmond*, No. C-13-02067 JSC, 2013 U.S. Dist. LEXIS 149804, at *12–13 (N.D. Cal. Oct. 17, 2013) (§ 52.1 does not necessarily require coercion independent from violation of a constitutional right, especially where conduct was intentional, i.e. volitional); *Rodriguez v. City of Modesto*, No. 1:10-CV-01370-LJO-MJS, 2013 U.S. Dist. LEXIS 172958, at *31–32; *35–36 (E.D. Cal. Dec. 9, 2013) ("the legal landscape has evolved" such that a separate showing of coercion is not necessary under the Bane Act; "there is no need for a plaintiff to allege a showing of coercion independent from the coercion inherent in the seizure ***or*** use of force."); *Skeels v. Pilegaard,* No. C12-2175 TEH, 2013 U.S. Dist. LEXIS 34302, at *11–12 (N.D. Cal. Mar. 12, 2013) (limiting *Shoyoye* to non-intentional conduct).

resisting a peace officer.").  In *Simmons*, the violation of rights was an unlawful strip search, and the coercion element was fully satisfied by the coercion intrinsic to a *lawful* arrest.

The *Simmons* court recognized that even a lawful arrest is "inherently coercive underlying conduct."  *Id*.  Clearly, where the coercion element was satisfied in *Simmons* by a lawful arrest, the coercion element here need not be an unlawful act—just something threatening, intimidating, or coercive.

Defendant Laughlin violated the Bane Act, because he unlawfully arrested Mr. May by subjecting him to the threat, intimidation, and coercion of a dog attack.  As in *Simmons*, the "threat, intimidation, or coercion" of the dog attack need not be proven unlawful—just threatening, intimidating, or coercive, and no reasonable person could dispute that the prolonged dog attack Defendant Laughlin deployed was at least as "inherently coercive" as the lawful arrest in *Simmons*.

Defendant San Mateo County is vicariously liable for Defendant Laughlin's violation of the Bane Act.  Cal. Gov't Code § 815.2.

## V. CONCLUSION AND RELIEF REQUESTED

Defendant Laughlin unreasonably believed that he had probable cause to arrest Mr. May for California Penal Code §§ 459, 460, 602(m), and 148(a).  For the foregoing reasons, Plaintiff May respectfully requests that this Court grant the following relief:

1. A declaratory judgment and finding of liability against Defendant Chris Laughlin as to Plaintiff's claim, under 42 U.S.C. § 1983, for violation of the Fourth Amendment based on warrantless arrest without probable cause. (First Amended Complaint (FAC), Count One (Doc. 44)).

2. A declaratory judgment that Defendant Laughlin is not entitled to qualified immunity for violating Plaintiff's clearly established right, under the Fourth Amendment, to be free from a warrantless arrest without probable cause.

3. In the alternative, a declaratory judgment and corresponding jury instruction that Defendant Laughlin lacked probable cause to arrest Plaintiff for having committed any felony under California law, including but not limited to a felony under California Penal Code §§ 459 and 460.

4. In the alternative, a declaratory judgment and corresponding jury instruction that Defendant Laughlin lacked probable cause to arrest Plaintiff for any misdemeanor under California law, including but not limited to California Penal Code §§ 459, 460, 602(m), and 148(a).

5. A declaratory judgment and finding of liability against Defendant Laughlin as to Plaintiff's claim for false arrest under California law. (FAC, Count Six).

6. If this Court finds Defendant Laughlin liable for false arrest under California law, then a declaratory judgment and finding of vicarious liability against Defendant San Mateo County under California Government Code § 815.2.

7. In the alternative, a declaratory judgment and corresponding jury instruction that Defendant Laughlin lacked probable cause to effect a custodial arrest for any crime under California law, including but not limited to California Penal Code §§ 459, 460, 602(m), and 148(a).

8. A declaratory judgment and finding of liability against Defendant Laughlin as to Plaintiff's Bane Act claim, Cal. Civil Code § 52.1, *et seq.*, based on Defendant Laughlin's arrest without probable cause (federal claim and/or state claim) of Plaintiff and the accompanying threats, intimidation, and coercion, in the deployment of *Riggs* to bite and hold him.  (FAC, Count Three).

9. If this Court finds Defendant Laughlin liable under the Bane Act, Cal. Civil Code § 52.1 *et seq.*, then a declaratory judgment and finding of vicarious liability against Defendant San Mateo County under California Government Code § 815.2

Respectfully Submitted,

Dated:  February 16, 2017

HADDAD & SHERWIN LLP

/s/ T. Kennedy Helm

T. KENNEDY HELM
Attorneys for Plaintiff
Richard Earl May, Jr.