1  JOHN C. BEIERS, COUNTY COUNSEL (SBN 144282)
   By: Justin W. Mates, Deputy (SBN 261830)
2  By: Brian E. Kulich, Deputy (SBN 233296)
   By: Margaret V. Tides, Deputy (SBN 311177)
3  Hall of Justice and Records
   400 County Center, 6th Floor
4  Redwood City, CA 94063
   Telephone: (650) 363-4760
5  Facsimile: (650) 363-4034
   E-mail: jmates@smcgov.org
6  E-mail: bkulich@smcgov.org
   E-mail: mtides@smcgov.org
7

8  Attorneys for Defendants
   SAN MATEO COUNTY, DEPUTY CHRIS LAUGHLIN,
9  and DEPUTY ERIC MICHEL

10

11                         UNITED STATES DISTRICT COURT

12                        NORTHERN DISTRICT OF CALIFORNIA

13

| | |
|---|---|
| 14  RICHARD EARL MAY, | Case No. 3:16-cv-00252 LB |
| 15        Plaintiff, | **DEFENDANTS' MOTION IN LIMINE NO. 4 TO EXCLUDE POLICIES OF THE SAN MATEO COUNTY SHERIFF'S OFFICE** |
| 16        vs. | |
| 17  COUNTY OF SAN MATEO, DEPUTY CHRIS LAUGHLIN, DEPUTY ERIC MICHEL, and DOES 1 through 10, individually, Jointly and Severally, | **Hearing** |
| | Date:  May 18, 2017 |
| | Time:  1:00 p.m. |
| | Dept:  C, 15th Floor |
| 20       Defendants. | **THE HONORABLE LAUREL BEELER** |
| | **TRIAL DATE:** June 5, 2017 |

## NOTICE OF MOTION

PLEASE TAKE NOTICE on May 18, 2017, at 1:00 p.m., or as soon thereafter as the matter may be heard, before the Honorable Laurel Beeler, in Courtroom C of the above-captioned court, located at 450 Golden Gate Avenue, 15th Floor, San Francisco, CA, Defendants San Mateo County, Sheriff's Deputy Chris Laughlin, and Sheriff's Deputy Eric Michel ("Defendants") will and hereby do move the court for an order prohibiting Plaintiff from presenting certain evidence at trial, in particular:

***Any documents or testimony regarding San Mateo County Sheriff's Office Policies.***

This motion is based upon this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, and any other matters which the Court in its discretion may allow.

## MOTION

Defendants seek an order excluding evidence offered by Plaintiff relating to San Mateo County Sheriff's Office (SMCSO) policies and procedures. Plaintiff's *Monell* claim has been dismissed, and the remaining claims consist solely of claims against individual officers. The only basis for County liability is vicarious. Therefore, evidence of County policies is irrelevant, misleading, and confusing, and should be excluded pursuant to Federal Rules of Evidence 401, 402, and 403.

### I.  ARGUMENT

The SMCSO policy is not relevant to Plaintiff's sole federal claim of excessive force under the Fourth Amendment. *See Whren v. United* States, 517 U.S. 806 (1996). The policies are similarly irrelevant to Plaintiff's negligence claim—because California courts apply the Fourth Amendment standard of reasonableness to claims such as this one. *See Newman v. San Joaquin Delta Cmty. Coll. Dist.*, 814 F. Supp. 2d 967, 980 (E.D. Cal. 2011). And Plaintiff's battery, assault, false imprisonment, and Bane Act claims center on the events of January 1, 2015—not on the existence, application, or violation of SMCSO policy, making such policies irrelevant and inadmissible. Similarly, the elements of vicarious liability are completely independent of SMCSO policy, making such evidence wholly inadmissible for that purpose. Therefore, pursuant to the Federal Rules of Evidence, the Court should preclude Plaintiff from introducing any SMCSO policies for the purpose of proving his claims.

///

///

### A. Fourth Amendment – Excessive Force

San Mateo County policies, procedures, and general orders are not relevant to the "objective-reasonableness test" applicable to Fourth Amendment excessive force claims because law enforcement policies represent subjective considerations. Further, any possible relevance is substantially outweighed by the danger of prejudice and risk of jury confusion because jurors may conflate or confuse County and Constitutional standards. *See* Fed. R. Evid. 403. Thus, the Court should preclude Plaintiff from introducing any evidence of SMCSO policies in support of his excessive force claim.

Fourth Amendment excessive force claims are subject to an "objective-reasonableness test." *See Blankenhorn v. City of Orange*, 485 F.3d 463, 480 (9th Cir. 2007). That objective test considers the severity of the crime, whether the suspect posed an immediate threat to safety, and whether he actively resisted or evaded arrest. *Graham v. Connor*, 490 U.S. 386, 396. By contrast, a test that looks at "whether the officer's conduct deviated materially from usual police practices. . . is plainly and indisputably driven by subjective considerations." *Whren v. United States*, 517 U.S. 806, 814-815 (1996) ("[P]olice enforcement practices, even if they could be practically assessed by a judge, vary from place to place and from time to time. We cannot accept that the search and seizure protections of the Fourth Amendment are so variable and can be made to turn upon such trivialities.").

This objective Fourth Amendment standard—independent of municipal or departmental guidelines—applies to excessive force claims that arise from the Fourth Amendment. *See generally* 3 Martin A. Schwartz, Section 1983 Litigation – Federal Evidence § 1.04[C][15] (5th ed. 2013) ("[T]he circuit courts have consistently rejected attempts by plaintiffs to demonstrate that the defendant officer failed to follow police department guidelines or proper procedure."); *Tanberg v. Sholtis*, 401 F.3d 1151, 1163 (10th Cir. 2005) (law enforcement standards of procedure excluded under Fed. R. of Evid. 401 and 403); *Smith v. Freland*, 954 F.2d 343, 347-348 (6th Cir. 1992) ("Under § 1983, the issue is whether Officer Schulcz violated the Constitution, not whether he should be disciplined by the local police force."); *Thompson v. City of Chicago*, 472 F.3d 444, 454 (7th Cir. 2006) ("the violation of police regulations or even a state law is completely immaterial as to the question of whether a violation of the federal constitution has been established."); *Daniels v. Loizzo*, 178 F.R.D. 46, 49, fn. 4 (S.D.N.Y. 1998) (plaintiff's evidence about police department policies was "largely irrelevant" to claims against

individual defendants); *Roguz v. Walsh*, No. 09cv1052, 2013 WL 1498126, at *8 (D. Conn. Apr. 15, 2013) ("The Court agrees with Walsh that the City's policies are not a substitute for a constitutional standard and that violation of or compliance with the City's policies cannot replace the Fourth Amendment inquiry.")

The common practice of bifurcating the trial of municipal Section 1983 defendants further underscores that municipal policies are irrelevant, prejudicial, and confusing in the trials of individual defendants. *See Quintanilla v. City of Downey*, 84 F.3d 353, 354-356 (9th Cir. 1996) (bifurcation prevents confusing the jury about which evidence may support a finding of a constitutional violation as to individual versus municipal defendants); *Atencio v. Arpaio*, No. CIV. 12-2376-PHX-PGR, 2013 WL 5327382, at *4 (D. Ariz. Sept. 24, 2013) ("[T]he institutional evidence against the County is both irrelevant to the claims of individual liability and, as discussed in more detail below, overly prejudicial.") Where the primary cause of injury is municipal policies (and thus, the lack of prejudice to individual defendants is diminished), claims are not bifurcated. *See, e.g.*, *Green v. Baca*, 226 F.R.D. 624 (C.D. Cal. 2005), *order clarified*, No. CV 02-204744MMMMANX, 2005 WL 283361 (C.D. Cal. Jan. 31, 2005). But here, by contrast, where the only possible cause of injury is individual defendants, there is no plausible reason to introduce evidence of County policy—and a great risk of prejudice and confusion.

**B. Negligence**

Under California law, police officers have a duty not to use excessive force. *Knapps v. City of Oakland,* 647 F.Supp.2d 1129, 1164 (N.D. Cal. 2009).[1] Whether an officer breached that duty is "analyzed under the reasonableness standard of the Fourth Amendment to the United Constitution." *Newman v. San Joaquin Delta Cmty. Coll. Dist.*, 814 F. Supp. 2d 967, 980 (E.D. Cal. 2011) (citations omitted). Thus, evidence of SMCSO policies is irrelevant and inadmissible pursuant to Federal Rule of Evidence 402.

///

---

[1] The elements of negligence are: (1) a legal duty to use due care; (2) breach of such legal duty; and (3) the breach was a proximate or legal cause of the resulting injury. *Ladd v. County of San Mateo,* 12 Cal.4th 913, 917 (1996); *see* CACI 400 (negligence), 440 (negligence of law enforcement officer related to unreasonable force).

The subjective determination of whether an officer violated policy is clearly beyond the permissible "reasonableness" inquiry of the Fourth Amendment. *Whren*, 517 U.S. 806, 814-815 (1996). Thus, because California applies the same standard to its negligence reasonableness inquiry, police policies are equally impermissible. *See Newman v. San Joaquin Delta Cmty. Coll. Dist.*, 814 F. Supp. 2d 967, 980 (E.D. Cal. 2011) (citations omitted); *see e.g.*, *Hayes v. Cty. of San Diego*, 57 Cal. 4th 622 P.3d 252 (2013) (policies not considered among facts in negligence analysis); *Venegas v. Cty. of Los Angeles*, 153 Cal. App. 4th 1230, 1249 (2007) (same); *Estate of Cartwright v. City of Concord, Cal.*, 618 F. Supp. 722, 729 (N.D. Cal. 1985), *aff'd*, 856 F.2d 1437 (9th Cir. 1988) (same).

This is congruent with other circuits. For example, the Seventh Circuit has explicitly held that law enforcement guidelines "have little or no bearing on whether the officer breached his duty of care in apprehending [the decedent]," and, further, that a limiting instruction to this effect would result in "unnecessary and detrimental jury confusion." *Thompson v. City of Chicago*, 472 F.3d 444 (7th Cir. 2006). Thus, the Court should preclude Plaintiff from introducing any evidence of SMCSO policies in support of his negligence claims.

### C. Assault, Battery, and False Arrest

The elements of assault are independent of SMCSO policies.[2] So, too, are the elements of battery[3] and false arrest.[4] These three claims hinge on what occurred in Half Moon Bay on January 1, 2015. SMCSO policies do not make the existence of any fact of consequence to these claims more or less

---

[2] "The elements of a cause of action for assault are: (1) the defendant acted with intent to cause harmful or offensive contact, or threatened to touch the plaintiff in a harmful or offensive manner; (2) the plaintiff reasonably believed he was about to be touched in a harmful or offensive manner or it reasonably appeared to the plaintiff that the defendant was about to carry out the threat; (3) the plaintiff did not consent to the defendant's conduct; (4) the plaintiff was harmed; and (5) the defendant's conduct was a substantial factor in causing the plaintiff's harm." *Carlsen v. Koivumaki*, 227 Cal. App. 4th 879, 890, 174 Cal. Rptr. 3d 339, 351 (2014).

[3] Plaintiff must "show that the Defendant Officers touched her with the intent to cause her harm, that she did not consent to be touched, and that she was harmed by the Defendant Officers' conduct." *See Ashcraft v. King,* 228 Cal.App.3d 604, 611, 278 Cal. Rptr. 900 (1991); CACI 1300.

[4] False arrest by a police officer requires the following elements: (1) the officer acted without a warrant; (2) the plaintiff was actually harmed; and (3) the officer's conduct was a substantial factor in causing plaintiff's harm. *See* CACI 1401.

probable. *See* Fed. R. Evid. 401. Even if battery is analyzed under the elements for battery by a police officer, which require finding the officer used "unreasonable force," that finding hinges on the *Graham* elements—which, as articulated before, do not include the subjective determination of policy compliance. *See* CACI 1305; *Whren*, 517 U.S. 806, 814-815 (1996). Therefore, while SMCSO policies may be introduced by Defendants to support affirmative defenses, the SMCSO policies are not admissible to support Plaintiff's assault, battery, or false arrest claims. *See* Fed. R. Evid. 402.

### D. Bane Act

Plaintiff also asserts violations of his civil rights pursuant to California Civil Code § 52.1, the Bane Act. These claims are independent of any SMCSO policies, because the policies do not make it more or less likely that Plaintiff's constitutional rights were violated. *See* Fed. R. Evid. 401. SMCSO policies are equally irrelevant to determining whether Plaintiff was subjected to coercion—like the state claims, this aspect centers wholly on the events of January 1, 2015. Therefore, the Court should preclude Plaintiff from introducing SMCSO policies as evidence in support of his Bane Act claims.

### E. Vicarious Liability

For the County to be held vicariously liable, Plaintiff must show Deputies Laughlin and Michel were County employees and acted within the scope of their employment. These facts are conceded. Thus, SMCSO policies are irrelevant, unnecessary, and cumulative. Thus they are inadmissible for purposes of establishing the County's vicarious liability. *See* Fed. R. Evid. 402.

### F. Qualified Immunity

Finally, Plaintiff will likely argue, as he has throughout this case, that SMCSO policies are relevant for the purposes of qualified immunity. They are not. To support his argument that Deputy Laughlin was not entitled to qualified immunity, Plaintiff wants to introduce at trial a selected portion of the SMCSO policies which provides:

> A canine may be deployed to locate and apprehend a suspect if the handler reasonably believes that the individual has committed, or threatened to commit, a serious or violent felony ***and*** any of the following conditions exist:
>
> 1. There is a reasonable belief that the individual poses an immediate threat of death or serious bodily harm to the public, another officer or to the handler.
> 2. The individual is physically resisting or threatening to resist arrest, and such resistance would likely result in death or serious bodily injury to the public, another officer, or to the handler, and the use of the canine reasonably appears necessary to overcome such resistance.

> 3. The individual is believed concealed in an area where entry by any means reasonably available, other than a canine, would pose a threat to the safety of the public, another officer, or to the handler.

(ECF No. 79, pp. 8:6-9:15 (emphasis added by Plaintiff).)

Assuming *arguendo* this selected portion of the SMCSO policy establishes the circumstances under which an officer may deploy a K-9, it would create a use of force standard ***stricter*** than the Constitutional standard. *Graham v. Connor*, 490 U.S. 386, 396 (1989); *Miller v. Clark County*, 340 F.3d 959, 964 (9th Cir. 2003). *Drummond v. City of Anaheim*, 343 F.3d 1052, 1062 (9th Cir. 2003) and related cases which provide that training materials can be relevant for the purposes of qualified immunity make clear that the relevancy of such materials is limited to whether they would put a reasonable officer on notice that his or her actions were unlawful.[5] Because the portion of the SMSCO policies at issue here would create a standard stricter than the Constitution, they could not possibly serve that purpose and are, therefore, irrelevant. Moreover, any probative value of the SMCSO policies on the qualified immunity issue would be outweighed by issue and jury confusion. Fed. R. Evid. 403.

Indeed, courts recognize that introducing evidence of law enforcement policies in determining the constitutionality (for federal claims) or reasonableness (for state claims) has negative policy implications. For example, in *Tanberg v. Sholtis*, the Tenth Circuit stated,

> "Although plaintiffs frequently wish to use administrative standards, like the Albuquerque [standard operating procedures], to support constitutional damages claims, this could disserve the objective of protecting civil liberties. Modern police departments are able—and often willing—to use administrative measures such as reprimands, salary adjustments, and promotions to encourage a high standard of public service, in excess of the federal constitutional minima." 401 F.3d 1151, 1164 (10th Cir. 2005).

A dissenting justice on the California Supreme Court noted similar policy implications:

> "The obvious, and unfortunate, result of its present holding will be to inhibit the preparation and publication of sorely needed departmental guidelines on the subject of restraint in the use of deadly weapons. Indeed, respectable authorities share my concern in this regard. The American Civil Liberties Union (ACLU), along with several like

---

[5] Also, the *Drummond* line of cases all deal with officer actions which were patently unconstitutional. That was clearly not the case here, where the Court held that "using Riggs in this way, in these circumstances, was not "'so patently violative of the constitutional right that reasonable officials would know without guidance from the courts" that the action was unconstitutional.'" *See Mendoza*, 27 F.3d at 1361 (quoting *Casteel v. Pieschek*, 3 F.3d 1050, 1053 (7th Cir. 1993)). (ECF No. 78, p. 19:5-8.)

organizations appearing herein as amici curiae, implore us to refrain from holding that violation of a police department manual may invoke a presumption of negligence."
*Peterson v. City of Long Beach*, 24 Cal. 3d 238, 249, 594 P.2d 477, 483 (1979) (J. Richardson, dissenting).

These policy considerations echo the concerns voiced by the U.S. Supreme Court in *Whren*: local law enforcement policies cannot form the basis for constitutional liability—or our inalienable rights would be undermined. 517 U.S. 806, 814-815 (1996). Similarly, tethering tortious liability to policies and procedures only incentivizes a "race to the bottom" in which law enforcement departments would avoid setting high standards to avoid a heightened risk of liability. Thankfully the opposite is true: both the constitutional standard and the standard of care are independent from local law enforcement policies and procedures. For this fundamental reason, the SMCSO policies should not—and cannot—be considered as evidence in establishing the requisite elements of Plaintiff's claims.

## II. CONCLUSION

Based on the foregoing, the Courts should grant Defendants' Motion in Limine No. 4 and exclude from trial any evidence, testimony, and/or argument related to SMCSO policies.

Dated: April 20, 2017                    JOHN C. BEIERS, COUNTY COUNSEL


By: _____/s/_____
       Justin W. Mates, Deputy
       Brian E. Kulich, Deputy
       Margaret V. Tides, Deputy

Attorneys for Defendants
SAN MATEO COUNTY, DEPUTY CHRIS LAUGHLIN, and DEPUTY ERIC MICHEL