MICHAEL J. HADDAD (State Bar No. 189114)
JULIA SHERWIN (State Bar No. 189268)
T. KENNEDY HELM (State Bar No. 282319)
MAYA SORENSEN (State Bar No. 250722)
HADDAD & SHERWIN LLP
505 Seventeenth Street
Oakland, California 94612
Telephone: (510) 452-5500
Fax: (510) 452-5510

Attorneys for Plaintiff
RICHARD EARL MAY, JR.

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RICHARD EARL MAY, JR., Individually, <br><br> Plaintiff, <br><br> vs. <br><br> SAN MATEO COUNTY, a public entity; SAN MATEO COUNTY SHERIFF'S DEPUTY CHRIS LAUGHLIN; DEPUTY ERIC MICHEL; and DOES 1 through 10, individually, Jointly and Severally, <br><br> Defendants. | No. 3:16-cv-00252-LB <br><br> Hon. Laurel Beeler <br><br> **PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION IN LIMINE # 4 RE: EXCLUDING SAN MATEO COUNTY SHERIFF'S OFFICE POLICIES** <br><br> Trial Date: June 5, 2017 <br> Time: 8:30 a.m. <br> Place: Courtroom C, 15th Floor <br> Final Pretrial Conference: May 18, 2017 <br> 1:00 p.m. |

**INTRODUCTION**

Defendants' fourth motion in limine seeks to prevent Mr. May from introducing **any evidence** "relating to San Mateo County Sheriff's Office (SMCSO) policies and procedures." (Defs.' MIL #4, 1:11–12 (emphasis added)). According to Defendants, such "policies, procedures, and general orders are not relevant to the 'objective-reasonableness test' applicable to Fourth Amendment excessive force claims because law enforcement policies represent subjective considerations." (Defs. MIL #4, 2:2–4). At the same time, Defendants concede that such policies are relevant, arguing: "SMCSO policies **may be introduced by Defendants** to support affirmative defenses[,]"—including, presumably, qualified immunity. (Defs.' MIL #4, 5:4–6 (emphasis added)). Defendants contend that the jury does not need to learn about the SMCSO policies and procedures because they have nothing to do with Mr. May's Fourth Amendment excessive force claim, or any other claim, because "both the constitutional standard and the standard of care are independent from local law enforcement policies and procedures." (Defs.' MIL #4:8–11). In fact, pursuant to longstanding Ninth Circuit precedent, including *Smith v. City of Hemet* (en banc), testimony or evidence regarding defendant Laughlin's violations of applicable law enforcement standards—including, but not limited to, the SMCSO's policies and procedures—are relevant to both the jury's determination of whether Defendant Laughlin used excessive force in violation of the Fourth Amendment (which forms the basis of Plaintiff's state-law claims) and to his entitlement to qualified immunity.

**ARGUMENT**

**A.  Under longstanding Ninth Circuit precedent, including *Smith v. City of Hemet*, 394 F.3d 689 (9th Cir. 2005) (en banc), a rational jury in a § 1983 excessive force action may properly consider evidence of a law enforcement agency's own policies—as well as policies from other entities.**

Defendants claim that SMCSO policies are "not relevant to Plaintiff's sole federal claim of excessive force under the Fourth Amendment." (Defs.' MIL # 4, 1:17–18 (citing *Whren v. United States*, 517 U.S. 806 (1996)). Defendants claim that *Whren* stands for the proposition that a police department's policies are not relevant to a jury's consideration of the "totality of the circumstances" under *Graham*'s objective-reasonableness test. To make this argument,

1   Defendants rely on an out-of-circuit case, *Tanberg v. Sholtis*, 401 F.3d 1151(10th Cir. 2005).
2   There, a § 1983 excessive force plaintiff appealed the district court's grant of defendants' motion
3   in limine to exclude evidence related to the Albuquerque Police Department's Standard Operating
4   Procedures. *Tanberg*, 401 F.3d at 1161. Reviewing the district court's order generously, in a
5   "deferential review," the panel held upheld the district court's exclusion of the evidence and
6   declined "Plaintiffs' invitation to use the Albuquerque Police Department's standard operating
7   procedures as evidence of constitutional standards." *Id.* at 1161–64. The panel reached this
8   conclusion by reading *Whren v. United States*, 517 U.S. 806 (1996), a case from the Fourth
9   Amendment "exclusionary rule context," as having "rejected the use of local police regulations as
10  a standard for evaluating constitutionality of police conduct, on the ground that such a 'bases of
11  invalidation would not apply in jurisdictions that had a different practice.'" *Id.* at 1163 (quoting
12  *Whren v. United States*, 517 U.S. 806, 915 (1996)). The *Tanberg* panel then held: "[t]hat logic
    would seem to apply equally to damage suits under § 1983." *Id.*
13
14          First, this is an unwarranted extension of *Whren*, which merely rejected evidence of police
15  department policies and procedures as a bright line test. The *Whren* petitioner was trying to
    "make the individual officer's subjective good faith the **touchstone** of reasonableness" by
16  predicating a constitutional violation on "whether the officer's conduct deviated materially from
17  police practices, so that a reasonable officer in the same circumstances would not have made the
18  stop for the reasons given." *Whren*, 517 U.S. at 813–14 (emphasis added). In contrast, an
19  excessive force claim is based on whether the officer's use of force was objectively reasonable
20  under the "totality of circumstances," which includes many factors as described in Ninth Circuit
21  Model Civil Jury Instruction 9.25.
22          At least one court in the Ninth Circuit has explicitly rejected this same extension of *Whren*
23  that Defendants advance here. *See Bonner v. Park*, No. C07-962RSM, 2008 U.S. Dist. LEXIS
24  114658, at *2–4 (W.D. Wash. Oct. 29, 2008) (denying, in a § 1983 excessive force case,
25  defendants' motion in limine to exclude police department policies; defendants "overstate the rule
26  of law" in *Whren*, which "never explicitly found that such practices should be completely
27
28

No. 3:16-cv-00252-LB: PLF.'S RSPNS. IN OPPO. TO DEFS.' MIL #4 RE: EXCLUDE SMCSO POLICIES    2

excluded from evidence, and never "suggested that the fact-finder should be precluded from hearing evidence that an officer may have violated the internal policy of his employer altogether.")

Second—and more importantly—*Tanberg* is not the law in the Ninth Circuit. While the Sixth and Seventh Circuits in *Smith v. Freland*, 954 F.2d 343 (6th Cir. 1992); *Thompson v. City of Chicago*, 472 F.3d 444 (7th Cir. 2006), may follow *Tanberg*, the Ninth Circuit does not. Defendants ignore binding precedent, *Smith v. City of Hemet*, 394 F.3d 689, 703 (9th Cir. 2005) (en banc), which held that a fact finder may properly consider a defendant-officer's police law enforcement agency's policies, among other evidence, to determine, under *Graham*, the "totality of the circumstances" of the reasonableness of the force used.

In *Smith*, as here, plaintiff argued that there were alternative techniques available for subduing him that presented a lesser threat of death or serious injury." *Smith*, 394 F.3d at 703. The availability of alternatives is, of course, part of the *Graham* analysis. *Id.* (citing *Chew v. Gates*, 27 F.3d 1432, 1441 n.5 (9th Cir. 1994)). In support, plaintiff provided, as Mr. May has here, expert testimony "[d]iscussing whether the officers' conduct comported with law enforcement standards," in which "the expert relied upon California Peace Officers Standards and Training, which are applicable to all state police officers *and are a part of Department policy*[;]" the expert concluded that the defendant officers should have used a *lesser* degree of force. *Smith*, 394 F.3d at 703. (emphasis added). The en banc *Smith* court held: "[a] rational jury could rely upon such evidence in assessing whether the officers' use of force was unreasonable." *Id.* (citing *Larez v. City of L.A.*, 946 F.2d 630, 635 (9th Cir. 1991) (as amended) (finding that testimony of "an expert on proper police procedures and policies" was relevant and admissible); *Davis v. Mason Cnty.*, 927 F.2d 1473, 1484-85 (9th Cir. 1991) (as amended) (testimony of plaintiffs' police practices expert that officers violated law enforcement standards properly received)).

Precisely because of the relevance and importance that police department policies, procedures, and training manuals have to the jury's performance of the *Graham* "totality of the circumstances" analysis—district courts in the Ninth Circuit deny defense motions to exclude evidence of police department policies and training materials in § 1983 excessive force cases. *See, e.g., Cotton v. City of Eureka*, No. C 08-04386 SBA, 2010 U.S. Dist. LEXIS 136270, at *64 (N.D.

Cal. Dec. 14, 2010) (citing *Smith*, 394 F.3d 689, 703 (9th Cir. 2005) (denying, in § 1983 action, defendants' motion in limine to exclude evidence related to defendants' failure to comply with their employer's written policies because, "[w]hile the failure to comply with internal procedures may not, standing alone establish that Defendants [violated decedent's constitutional rights], such evidence is pertinent, in combination with the other evidence in this case, to the overall reasonableness and/or deliberateness of the conduct at issue."); *Bonner v. Park*, No. C07-962RSM, 2008 U.S. Dist. LEXIS 114658, at *3–4 (W.D. Wash. Oct. 29, 2008) (emphasis added) (denying defendants' motion in limine to exclude defendant police department's policies, and holding that "any allegation" that the defendant officer violated his police department's policy on the amount of force to be used is "a consideration that the fact-finder may consider in evaluating an individual's excessive force claim."); *Engman v. City of Ontario*, No. EDCV 10-284 CAS (PLAx), 2011 U.S. Dist. LEXIS 66128, at *12–13 (C.D. Cal. June 20, 2011) (citing Fed. R. Evid. 703) (denying defendants' motion in limine "to exclude introduction of evidence of any other policies, practices, guidelines, and literature of any other police agency or organization regarding the use of force[.]" because "plaintiff's experts may rely on other policies and standards (i.e., California's Peace Officer Standards and Training) in forming their opinions."); *Rhead v. Mundy*, No. 01cv0629-LAB (WMc), 2005 U.S. Dist. LEXIS 47633, at *61 (S.D. Cal. Oct. 20, 2005) (denying defendant's motion in limine to exclude evidence of police department directives and policies that inform the excessive force claims). This Court should, too.

**B.     Because Plaintiff's California-law-based claims flow from his Fourth Amendment claim, SMCSO policies and procedures are necessarily relevant to those as well.**

If Plaintiff proves his Fourth Amendment excessive force claim, he proves his Bane Act claim. *See Chaudhry v. City of L.A.*, 751 F.3d 1096, 1105-06 (9th Cir. 2014) (citing *Cameron v. Craig*, 713 F.3d 1012, 1022 (9th Cir. 2013) ("[T]he elements of the excessive force claim under § 52.1 are the same as under § 1983."). Plaintiff's false arrest and battery claims are proven by the same wrongful acts that support his § 1983 claim. Under "established common law tort principles" false arrest, false imprisonment, wrongful termination "or the like," "may be established by demonstrating a violation of a constitutional provision." *Katzberg v. Regents of the*

*Univ. of Calif*, 29 Cal. 4th 300, 303 n.1 (2002); *see also Blankenhorn v. City of Orange*, 485 F.3d 463, 486–88 (9th Cir. 2007); *Robinson v. Solano Cnty.*, 278 F.3d 1007, 1016–17 (9th Cir. 2012) (en banc) (constitutional violations support state tort claims for false imprisonment, assault and batter, and there is no immunity from such claims); *Edson v. City of Anaheim*, 63 Cal. App. 4th 1269, 1274–75 (1998) (holding that the state tort of battery by a police officer essentially tracks a claim for use of excessive force under the Fourth Amendment and is measured by the same reasonableness standard).

Lastly, whether Defendant Laughlin violated SMCSO's policies, including its General Orders, is relevant to Plaintiff's negligence claim. A negligence claim may be based on a use of excessive force. *Hernandez v. City of Pomona*, 46 Cal. 4th 501, 513–14 (2009). Under California law, a peace officer may be held liable for negligence because "'a public employee is liable for an injury caused by his act or omission to the same extent as a private person,' except as otherwise specifically provided by statute." *Lugtu v. California Highway Patrol*, 26 Cal. 4th 703, 715 (2001) (quoting Cal. Gov't Code § 820(a)). Officers have "a duty 'to perform their official duties in a reasonable manner,'" and "a law enforcement officer has a duty to exercise reasonable care for the safety of those persons whom the officers stops . . ." *Id.* at 717–18 (citing Whitton v. State of California, 98 Cal. App. 3d 235, 241 (1979)). *Lugtu* approved the determination of the standard of care based on the department's training and policy materials, as well as the plaintiff's expert's testimony. *Id.* at 720–24; *see also Dillenbeck v. City of L.A.*, 69 Cal. 2d 472, 480 (1968) (holding, in a negligence case, that a trial court should have admitted a police department's rules as "evidence of the component requirements of due care[;]" "[the] safety rules of an employer are . . . admissible as evidence that due care requires the course of conduct prescribed in the rule."); *Grudt v. City of L.A.*, 2 Cal. 3d 575, 588 (1970) (citing *Dillenbeck*, 69 Cal. 2d at 588) (a police department's manual was relevant to plaintiff's negligence claim, because it "prescribed rules regarding occasions for the limited use of firearms by police officers.").

Whether Defendant Laughlin failed to follow his department's policies helps the jury decide whether he was negligent. *See Mitchell v. City of Tukwila*, No. C12-238RSL, 2013 U.S. Dist. LEXIS 177816, at *5 (W.D. Wash. Dec. 17, 2013) (denying defendant's motion in limine to


exclude evidence of defendant police department's policies, because"[a]lthough Plaintiff's *Monell* claim against the City has been dismissed, Tukwila Police Department policies regarding the use of force and use of a taser are relevant and probative of whether Officer Gurr's conduct was negligent.").

Defendants do not cite any authority to the contrary. *Newman v. San Joaquin Delta Community College District*, 814 F. Supp. 2d 967, 980 (E.D. Cal. 2011) does not say, nor does it support, the argument that police policies are "equally impermissible" to establishing the standard of care; all *Newman* says is that under California law, police officers have a duty not to use excessive force, and to determine whether an officer has breached this duty, a jury applies the *Graham* analysis—which necessarily incorporates expert testimony, and evidence of policies and training materials to establish the "standard of care." Defendants claim that *Hayes v. County of San Diego*, 57 Cal. 4th 622 (2013) and *Estate of Cartwright v. City of* Concord, 618 F. Supp. 722, 729 (N.D. Cal. 1985) stand for the proposition that SMCSO policies are "not considered among facts in negligence analysis." (Defs.' MIL#4, 4:5-6). They do not. *Hayes* held that, under California negligence law, police officer liability may arise from tactical conduct and decisions employed by law enforcement preceding the use of deadly force." *Hayes*, 57 Cal. 4th, at 626. The California Supreme Court held that "such liability can arise if the tactical conduct and decisions leading up to the use of deadly force show, as part of the totality of the circumstances, that the use of deadly force was unreasonable." *Hayes*, 57 Cal. 4th, at 626. The cited portion of *Estate of Cartwright* simply held, on the facts before it, that the actions of jail medical personnel "were not negligent, and certainly were not deliberate indifference" to the plaintiff. *Estate of Cartwright*, 618 F. Supp. at 729.

**C.  Evidence that Defendant Laughlin violated Sheriff's Office policy when he sicced *Riggs* to bite and hold Mr. May—and that he had done so in the past—is also properly admissible to support denial of qualified immunity to defendant Laughlin and to allow the jury to determine punitive damages.**

Evidence of Defendant San Mateo County Sheriff's Office policies and training materials "are relevant not only to whether the force employed in this case was objectively unreasonable . . . but also to whether reasonable officers would have been on *notice* that the force employed was

objectively unreasonable." *Drummond v. City of Anaheim*, 343 F.3d 1052, 1062 (9th Cir. 2003); *Headwaters Forest Def. v. Cnty. of Humboldt ("Headwaters II")*, 276 F.3d 1125, 1131 (9th Cir. 2002) (no qualified immunity for officers who violated regional and statewide police protocol).

Here, Defendant Laughlin was on notice that deploying *Riggs* could constitute deadly force, and that he should only use deadly force when facing a "serious or violent" felon presenting a proportionate immediate threat of death or serious bodily harm. The specific policy section Defendants want to exclude—Section 5-01 of the Canine Unit Manual—tracks the requirements for the use of deadly force as articulated in *Tennessee v. Garner*: force "to be used *only* if '[1] it is necessary to prevent the escape [of a suspected felon] and [2] the officer has probable cause to believe that the suspect poses a significant threat of death or serious physical injury to the officer or others.'" *Smith*, 343 F.3d at 1057 (quoting *Brewer v. City of Napa*, 210 F.3d 1093, 1097-98 (9th Cir 2001) (quoting *Garner*, 471 U.S. at 3 (internal quotation marks and emphasis omitted); *see also Monroe v. City of Phoenix*, 248 F.3d 851, 859 (9th Cir. 2001) (noting the twin requirements of escape and serious physical harm.)))" Section 5-01 of the SMCSO Canine Services Unit Manual states the *Garner* rule almost verbatim, requiring essentially the same two elements: (1) the handler "reasonably believes that the suspect has committed, or threatened to commit, a serious or violent felony <u>and</u>" any of the following conditions exists:

> 1. There is a reasonable belief that the individual poses an immediate threat of death or serious bodily harm to the public, another officer or to the handler.
> 2. The individual is physically resisting or threatening to resist arrest, and such resistance would likely result in death or serious bodily injury to the public, another officer, or to the handler, and the use of the canine reasonably appears necessary to overcome such resistance.
> 3. The individual is believed concealed in an area where entry by any means reasonably available, other than a canine, would pose a threat to the safety of the public, another officer, or to the handler.

(**Ex. I**, Canine Services Unit Manual § 5-01, pp. 1–2). Even Defendant County's 30(b)(6) witness agreed that § 5-01 sets forth a "similar" standard to that of deadly force, in which the officer must articulate an immediate threat of death or serious bodily injury. (**Ex. J**, Duri Dep., 27:22–28:1). This, and other SMCSO policies and procedures are relevant to assessing Defendant Laughlin's entitlement (or not) to qualified immunity. While *Garner* "did not establish a magical on/off

switch that triggers rigid preconditions whenever an officer's actions constitute 'deadly force'" and instead was "simply an application of the Fourth Amendment's 'reasonableness' test," *Scott v. Harris*, 550 U.S. 372, 382–83 (2007), what matters is whether Defendant Laughlin's conduct was reasonable. A jury could easily find, based on his failure to follow § 5-01, that his actions were not, and that a reasonable officer would have known better.

## CONCLUSION

Because testimony regarding police practices and procedures and the proper use of force is both helpful to the jury's determination of whether Defendant Laughlin's use of force was reasonable under the Fourth Amendment and relevant to whether he will enjoy qualified immunity, this Court should deny this motion in its entirety.

Dated: April 27, 2017                                    HADDAD & SHERWIN LLP

/s/ T. Kennedy Helm
―――――――――――――
T. KENNEDY HELM
Attorneys for Plaintiff