MICHAEL J. HADDAD (State Bar No. 189114)
JULIA SHERWIN (State Bar No. 189268)
T. KENNEDY HELM (State Bar No. 282319)
MAYA SORENSEN (State Bar No. 250722)
HADDAD & SHERWIN LLP
505 Seventeenth Street
Oakland, California 94612
Telephone: (510) 452-5500
Fax: (510) 452-5510

Attorneys for Plaintiff
RICHARD EARL MAY, JR.

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RICHARD EARL MAY, JR., Individually, <br><br> Plaintiff, <br><br> vs. <br><br> SAN MATEO COUNTY, a public entity; SAN MATEO COUNTY SHERIFF'S DEPUTY CHRIS LAUGHLIN; DEPUTY ERIC MICHEL; and DOES 1 through 10, individually, Jointly and Severally, <br><br> Defendants. | No. 3:16-cv-00252-LB <br><br> Hon. Laurel Beeler <br><br> **PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION IN LIMINE # 5 RE: EXCLUDING EVIDENCE OF *RIGGS'* OTHER BITES** <br><br> Trial Date: June 5, 2017 <br> Time: 8:30 a.m. <br> Place: Courtroom C, 15th Floor <br> Final Pretrial Conference: May 18, 2017 <br> 1:00 p.m. |

No. 3:16-cv-00252-LB: PLF.'S RSPNS. IN OPPO. TO DEFS.' MIL #5 RE: EVID. OF *RIGGS*' OTHER BITES

**INTRODUCTION**

Defendants seek to exclude "any documents or testimony regarding San Mateo County Sheriff's K9 Riggs' other bites." (Defs.' MIL #5, 2:7). Defendants later specify that they seek to exclude the photographs of *Riggs'* other bites. Plaintiff may introduce at trial testimony and evidence relying on perhaps a dozen photographs of *Riggs*' other bites. Throughout this case, Defendants have argued, and will argue at trial, that *Riggs* represents a low level of force. These photos are relevant not only to rebut Defendants' arguments, but also to allow the jury to determine the type and amount of force used. Further, their probative value outweighs any prejudice to Defendants; juries in other kinds of cases (such as a murder case) see far more graphic evidence, and a limiting instruction from this Court would suffice to address any possible prejudice—an alternative that Defendants fail to address in their motion.

**ARGUMENT**

**A.   Photos showing the injuries that *Riggs* inflicts are relevant to the jury's determination of Plaintiff's Fourth Amendment excessive force claim, and specifically to the "type and amount" of force that a trained police canine like *Riggs* represents.**

At trial, the jury will have to define "the type and amount of force used[.]" 9th Cir. Jury Instruc. 9.25. A rational jury could conclude that *Riggs* constituted the deadly "type" of force. As this Court held, "[u]se of a trained police dog may be regarded as 'intermediate force' or deadly force,' depending on the factual circumstances in the case.'" (*See* Doc. 78, 17:10–12) (quoting *Ledesma v. Kern Cnty.*, No. 1:14-cv-01634-DAD-JLT, 2016 U.S. Dist. LEXIS 156554, at * 28 (E.D. Cal. Nov. 10, 2016)). Indeed, a trained police dog is classified as intermediate or deadly force because of its *risk* of such harm. *See Scott v. Harris*, 550 U.S. 372, 383 (2007) ("[I]n judging whether [Deputy Laughlin]'s actions were reasonable, we must consider the *risk* of bodily harm that [Laughlin]'s actions posed to respondent in light of the threat to the public that [Laughlin] was trying to eliminate.") (emphasis added); *Glenn v. Washington Cnty.*, 673 F.3d 864, 872 (9th Cir. 2011) (citing *Deorle v. Rutherford*, 272 F.3d 1272, 1280 (9th Cir. 2001) ("In light of this weapon's *dangerous capabilities*, '[s]uch force, though less than deadly, . . . is permissible only when a strong governmental interest compels the employment of such force.").

1    A rational jury, *not* employing 20/20 hindsight, could conclude, under the factual
2  circumstances of this case, that Defendant Laughlin's use of *Riggs* constituted a severe—or even
3  deadly—use of force.  The Canine Unit's manual, section 5-01, tracks the *Garner*'s legal standard
4  for the use of *deadly* force.  Defense-aligned witnesses all agree on the potentially deadly level of
5  force that *Riggs* represents.  Defendant County's 30(b)(6) witness acknowledged the high level of
6  force that police canines pose, and that Mr. May's bites were "pretty severe."  (**Ex. J**, Duri Dep.,
7  16:16–17:7; 46:11–47:14).  Sgt. Ramos, the Canine Unit Supervisor, agreed that Mr. May's bite
8  wounds looked like multiple bites to him, and he characterized them as "moderate" and required
9  medical care.  (**Ex. K**, Ramos Dep., 83:1–11; **Ex. L**, three photographs of Mr. May's bite
10 wounds).  Sgt. Ramos agreed that a police dog can cause death.  (**Ex. K**, Ramos Dep., 22:1–3).
11 Most importantly, defendant Laughlin agreed that a single dog-bite wound could be very severe in
12 itself, and deputy Michel conceded that a canine like *Riggs* could kill someone.  (**Ex. H**, Laughlin
13 Dep., 71:7–9; **Ex. M**, Michel Dep., 89:19–24).

   Yet, Defendants maintain that "[t]he force used in this case was, at most, moderate."  (Doc.
14 62, p. 8:27).

   Defendants' police practices expert, Brad Smith, testified in this case that whether or not
15 the use of a police dog to bite someone is a high level of force "depends on the dog itself, how
16 much damage is actually done."  (**Ex. N**, Brad Smith Dep., 80:3–4).  Mr. Smith testified that an
17 officer should know the severity of the wound his dog is likely to cause based on the dog's "past
18 history:"

19
> He might [know] based on the past history of his dog.  I've talked to several
20 > handlers that, you know, know that the dog just likes to bite clothing, or he doesn't,
21 > you know, get a real good, firm grip on the suspect, so they just know what the
22 > damage is going to be.  So they're basing that off on prior history.

23 (**Ex. N**, Smith Dep., 82:25–83:8).  Deputy Laughlin's knowledge of "how much damage [Riggs
24 has] actually done" to other people therefore is relevant to Laughlin's knowledge of the level of
25 force *Riggs* posed to Mr. May.  The photographs of *Riggs'* other bites—particularly the
26 *Riggs*/Laughlin bites of which Deputy Laughlin was aware before he ordered *Riggs* to bite Mr.
27
28

May—therefore will assist the jury in determining Plaintiff's Fourth Amendment excessive force claim.

Furthermore, because Plaintiff's state law claims flow from his Fourth Amendment excessive force claim, the photos are necessarily relevant to those as well.  If Plaintiff proves his Fourth Amendment excessive force claim, he proves his Bane Act claim.  *See Chaudhry v. City of L.A.*, 751 F.3d 1096, 1105-06 (9th Cir. 2014) (citing *Cameron v. Craig*, 713 F.3d 1012, 1022 (9th Cir. 2013) ("[T]he elements of the excessive force claim under § 52.1 are the same as under § 1983.").  Plaintiff's battery claims are proven by the same wrongful acts that support his § 1983 claim.  *Blankenhorn v. City of Orange*, 485 F.3d 463, 486-88 (9th Cir. 2007); *Robinson v. Solano Cnty.*, 278 F.3d 1007, 1016-17 (9th Cir. 2012) (en banc) (constitutional violations support state tort claims for false imprisonment, assault and batter, and there is no immunity from such claims); *Edson v. City of Anaheim*, 63 Cal. App. 4th 1269, 1274-75 (1998) (holding that the state tort of battery by a police officer essentially tracks a claim for use of excessive force under the Fourth Amendment and is measured by the same reasonableness standard).  The photos of *Riggs*' other bites are therefore relevant to Plaintiff's state law claims as well.

**B.    The probative value of the photographs of *Riggs*' other bites outweighs any prejudice that Defendants might suffer due to the photographs' depiction of bite wounds.**

Plaintiff does not seek to introduce the photos of *Riggs*' other bites for "shock value" or "character contamination."  (Defs.' MIL #5, 4:11–12).  Defendants exaggerate the prejudice that these photos may cause, claiming that they are "highly prejudicial" because they consist "primarily of graphic photographs of dog bite wounds: close-up photographs of bleeding body parts."  (Defs.' MIL #5, 5:9–10).  But juries see far more graphic evidence—for example, in murder cases, or child pornography cases.  "Further, it is the duty of jurors to see and weigh relevant evidence, even disturbing evidence, when sitting in judgment of their fellow citizens." *United States v. Storm*, 915 F. Supp. 2d 1196, 1206 (D. Ore. 2012).  This Court certainly needs to look at the proffered photos before granting such a broad motion in limine.

A limiting instruction would cure any prejudice—which Defendants fail to address in their motion.  *See Miller v. City of Los Angeles*, 661 F.3d 1024, 1030 (9th Cir. 2011) (citing *Richardson*

*v. Marsh*, 481 U.S. 200, 206–07 (1987) (holding that there exists "a strong presumption that jurors follow instructions."); *see also Bayramoglu v. Estelle*, 806 F.2d 880, 888 (9th Cir. 1986) (quoting *United States v. Berry*, 627 F.2d 193, 198 (9th Cir. 1980) ("A timely instruction from the judge usually cures the prejudicial impact of evidence unless it is highly prejudicial or the instruction is clearly inadequate.")).

Defendants rely heavily on *Quintanilla v. City of Downey*, 84 F.3d 353 (9th Cir. 1996), but that case does not compel exclusion of the photographs of *Riggs*' other bites—rather, it contemplates Mr. May's use of such photos.  In *Quintanilla*, the plaintiff offered evidence of other police dogs attacks, including graphic photographs from unrelated cases, to prove the existence, under *Monell*, of an unconstitutional policy—a different purpose than Plaintiff would offer photos in this case.  *Id.* at 355.  The district court excluded this evidence.  *Id.*  While the *Quintanilla* panel upheld this ruling, the *Quintanilla* panel stated that if plaintiff's counsel had "offered the evidence with instructions limiting its relevance" to the issue of whether the individual officers' use of the police dog in this particular case was unconstitutional, "**it may well have been admissible to demonstrate the dog's capacity for causing serious injury.**"  *Id.* at 356 (citing *Chew v. Gates*, 27 F.3d 1432, 1453–55 (9th Cir. 1994) (Norris, J., concurring in part and dissenting in part) (dog's capacity for causing serious bodily injury is relevant to whether it constitutes deadly force) (citations omitted; emphasis added)).

Defendants also claim that the probative nature of the photographs is "greatly limited by the lack of information surrounding those events."  (Defs.' MIL #5, 5:16–18).  But this argument goes to the weight, not to the admissibility, of the photos.  Defendants may make these arguments at trial, but they do not provide a basis for a motion in limine to exclude this relevant and probative evidence.

**CONCLUSION**

The photos of *Riggs*' other bites are relevant because they will help the jury determine the level of force that a police canine like *Riggs* represents.  They are relevant not only to Plaintiff's Fourth Amendment excessive force claim, but also to his state law claims based on Defendant

No. 3:16-cv-00252-LB: PLF.'S RSPNS. IN OPPO. TO DEFS.' MIL #5 RE: EVID. OF *RIGGS*' OTHER BITES     4

Laughlin's same unlawful conduct.  Their probative value outweighs any prejudice to Defendants. This Court should deny Defendants' motion in its entirety.

Dated: April 27, 2017                                     HADDAD & SHERWIN LLP

                                                          */s/ T. Kennedy Helm*
                                                          ─────────────────────
                                                          T. KENNEDY HELM
                                                          Attorneys for Plaintiff