UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

San Francisco Division

| | |
|---|---|
| RICHARD EARL MAY,<br><br>Plaintiff,<br><br>v.<br><br>SAN MATEO COUNTY, et al.,<br><br>Defendants. | Case No. 16-cv-00252-LB<br><br>FINAL PRETRIAL ORDER |

The court held a final pretrial conference in this matter on May 18, 2017. The court adopts the following pretrial order. *See* Fed. R. Civ. P. 16(e).

**I.    TRIAL DATE & LENGTH OF TRIAL**

A. The jury trial will begin on June 5, 2017, in Courtroom C, 15th Floor, U.S. District Court, 450 Golden Gate Avenue, San Francisco, California. The trial will last five days. The trial will be held Monday through Friday from 8:30 a.m. to approximately 2:00 p.m. (or slightly longer to finish a witness) and will include two 15-minute breaks. Counsel must arrive at 8:15 a.m. to address any issues (such as objections) before the trial day begins. Once the jury begins deliberations, it usually stays past 2:00 p.m.

B. Each side will have 10 hours to present the direct examination of its witnesses and to

cross-examine the opposing party's witnesses, including all objections raised during the trial day. In addition, each party may make an opening statement of around 45 minutes.

## II. PROCEDURE DURING TRIAL

Please refer to the Court's April 22, 2016 Pretrial Order for the proper procedures regarding the presentation of exhibits, depositions, and witness testimony during trial. (ECF No. 24.)

## III. CLAIMS REMAINING; DEFENSES; RELIEF SOUGHT; FACTS; DISPUTED LEGAL ISSUES

The following claims remain to be tried against the following defendants:

### A. Claims and Defenses

#### 1. The plaintiff's claims

1. Violation of Fourth Amendment, excessive force, against Defendant Laughlin;
2. Violation of California Civil Code § 52.1 – Interference by Threat, Intimidation or Coercion with the Exercise of an Individual's Rights, against Defendants Laughlin and County;
3. Negligence, against Defendants Laughlin and County;
4. Assault and Battery, against Defendants Laughlin and County; and
5. False Arrest and Imprisonment (California state law), against Defendants Laughlin and County. Because the court has summarily decided that Deputy Laughlin had probable cause to arrest Mr. May initially, this claim is limited to a "dissipation theory"; *i.e.*, the claim challenges whether, and for how long, probable cause remained to detain and eventually cite Mr. May.

#### 2. Defendants' defenses

1. Defendant Laughlin's deployment and use of his K-9 *Riggs* was objectively reasonable under the circumstances and, therefore, did not violate the Fourth Amendment, violate Civil Code § 52.1, or constitute state-law negligence or assault and battery;

2. There was no act of coercion independent of any coercion inherent in the alleged excessive force and, therefore, Defendants cannot be liable under Civil Code § 52.1;
3. Defendant Laughlin had probable cause to arrest Plaintiff and, therefore, Defendants cannot be liable for state-law false arrest;
4. Plaintiff was comparatively negligent and/or by his own acts contributed to the creation of a dangerous situation;
5. Plaintiff failed to properly mitigate any alleged damages he suffered as a result of the incident;
6. Defendant Laughlin is immune from liability for Plaintiff's § 1983 claim under qualified immunity; and
7. There is no basis for an award of punitive damages against Defendant Laughlin.

## B. Relief Sought

The plaintiff seeks damages for the following injuries, in an amount according to proof and that is fair, just, and reasonable:

1. Physical and emotional pain and suffering, including physically and emotionally traumatic wrongful seizure and battery, painful bite wounds, loss of enjoyment of life;
2. Up to three times actual damages under Cal. Civ. Code § 52.1; and
3. Punitive damages against Defendant Laughlin.

The plaintiff also seeks attorney's fees and costs allowable under federal law on his 42 U.S.C. §§ 1983 and 1988 claims, under Cal. Civ. Code § 52.1, and Cal. Code of Civil Procedure § 1021.5, including a required enhancement of attorney's fees under state law. *See Horsford v. Bd. of Trs.*, 132 Cal. App. 4th, 359, 394–95 (2005); *Bender v. Cnty. of L.A.*, 217 Cal. App. 4th. 968, 988 (2013).

## C. Stipulated and Undisputed Facts

1. At all times, Defendant Laughlin acted under color of law.
2. Sharon Coster called the security-company number posted on the fence surrounding the

constructionsite, and the call went to a medical-supply company in Ohio.

3. Defendant Laughlin had no information about any prior crimes at the construction site.

4. Defendant Laughlin arrested Plaintiff at the construction site for commercial burglary.

5. Defendant Laughlin cited Plaintiff for violating Cal. Penal Code §§ 602 (m) and 148 (a).

6. Defendant Laughlin had probable cause to arrest Plaintiff for misdemeanor trespass (based on the Summary-Judgment Order).

7. The San Mateo County District Attorney declined to file any criminal charges against Mr. May.

8. Defendant Laughlin was not disciplined as a result of this incident.

9. Defendant Laughlin was not charged with any crimes as a result of this incident.

The parties must prepare the appropriate stipulations to read to the jury and admit as evidence.

**D. Disputed Fact Issues**

1. Whether Defendant Laughlin had probable cause to arrest Plaintiff for the specific-intent crime of commercial burglary, Cal. Penal Code §§ 459, 460.

2. Whether Defendant Laughlin's continued custodial arrest of Plaintiff (after he knew or reasonably should have known the facts surrounding the rescue of the cat) and his subsequent citation of Plaintiff for violating California Penal Code §§ 602(m) and 148(a) constitute false arrest and imprisonment under state law.

3. The type and amount of force represented by the deployment of police canine *Riggs* to bite and apprehend Plaintiff.

4. Whether Defendant Laughlin gave reasonable, appropriate, and audible canine announcements and warnings before ordering police canine *Riggs* to bite and apprehend Plaintiff.

5. Whether Plaintiff heard and failed to comply with canine announcements and warnings given by Defendant Laughlin.

6. The severity of any crime for which Defendant Laughlin had probable cause to arrest Plaintiff at the time Laughlin decided to deploy police canine *Riggs* to bite and apprehend

Plaintiff.[1]

7. Whether Plaintiff posed an immediate threat at the time Defendant Laughlin decided to deploy police canine *Riggs* to bite and apprehend Plaintiff.

8. Whether Plaintiff actively resisted arrest or attempted to flee from arrest at the time Laughlin decided to deploy police canine *Riggs* to bite and apprehend Plaintiff.

9. Whether Defendant Laughlin had alternatives to deploying police canine *Riggs* to bite and apprehend Plaintiff.

10. Other factors relevant to the use of force as set forth in the jury instructions.

11. Whether Detective Laughlin's use of the police canine *Riggs* to bite and apprehend Plaintiff was objectively unreasonable under the circumstances.

12. Whether Defendant Laughlin ordered or permitted *Riggs* to continue biting Plaintiff for an excessive amount of time.

13. Whether Defendant Laughlin violated Plaintiff's rights by threat, intimidation, or coercion.

14. The generally accepted law-enforcement training and standards that applied to the present situation.

15. Whether Defendant Laughlin's conduct and tactics violated generally accepted law-enforcement training, standards, and policies, including his use of the police canine *Riggs* to bite and apprehend Plaintiff, such that he acted negligently and caused Plaintiff damages.

16. Whether Plaintiff was comparatively negligent and such comparative negligence caused Plaintiff damages.

17. The nature and extent of Plaintiff's injuries and damages.

18. Whether Plaintiff properly mitigated any damages he suffered.

19. Whether Defendant Laughlin acted with reckless disregard for Plaintiff's rights and safety or with malice or oppression.

---

[1] On May 9, 2017, the court held that it could not decide, as a matter of law, whether Deputy Laughlin had probable cause to arrest Mr. May for commercial burglary. The court more specifically was unable to determine, at the summary-judgment stage, whether the record established that Mr. May or anyone associated with him had entered a structure on the property. (*See* ECF No. 116.)

20. The amount of punitive damages, if any, that should be issued against Defendant Laughlin.

### E. Disputed Legal Issues for Resolution by the Court

1. Whether Defendants Laughlin and County are liable for false arrest and imprisonment under California law.

2. Whether Defendant Laughlin entitled to qualified immunity for any violation of the plaintiff's federal constitutional right.[2]

### F. Parties' Stipulations

1. The parties will meet and confer about a stipulation that certain pages of Plaintiff's medical records are authentic and are business records. (Other objections to admissibility are preserved.) The parties' proposed pretrial order contains the agreed-upon pages. The parties will file a stipulation that memorializes the agreement.

2. The parties will submit a joint stipulation about the CAD and dispatch audio recordings. (*See* Joint Proposed Pretrial Order – ECF No. 103 at 8.)

3. Defendants agree to produce at trial the following current and former SMSO officers, without the need for subpoena:

   a. Defendant Laughlin;
   b. Deputy Michel;
   c. Sergeant Gary Ramos (a former employee)
   d. Deputy Sanchez
   e. Deputy DeMartini
   f. Deputy King
   g. Sergeant Loubal
   h. Deputy Zeugin
   i. Lieutenant Duri

4. The parties will stipulate to authentication and similar issues to avoid calling custodians at trial. The parties may reserve other objections regarding admissibility.

---

[2] The court has already held, and confirmed in a later order, that Deputy Laughlin has qualified immunity from the Fourth Amendment false-arrest claim. (ECF Nos. 78, 116.)

5. As discussed in the section on the parties' stipulations of fact, they will confer and admit stipulations at trial to establish the record for their stipulated facts.

## IV. PLAINTIFF'S MOTIONS IN LIMINE

For the reasons stated on the record and below, the court rules as follows.

### 1. MIL 1: Voir Dire and Trial Limits

The court grants the motion in part and denies it in part. The court allows attorney voir dire and limits it to approximately one hour per side in a case of this magnitude. The court imposes the trial limits above, thinks they are sufficient given the overlapping witness lists, and will be mindful of allowing the attorneys to try their cases.

### 2. MIL 2: Lawsuit, Medi-Cal Benefits, Dismissed Claims, Comments, and Paramedic Testimony

The court grants the motion in part and denies it in part.

The court grants the motion to exclude reference to Mr. Burrell's dismissed lawsuit, largely for the reasons that the plaintiff advances. The lawsuit is of marginal relevance and would create a sideshow.

The court grants the motion to exclude evidence of collateral-source payments.

The court grants the unopposed motion to preclude testimony about dismissed claims. The court denies the motion to exclude Deputy Michel's testimony. He is a percipient witness and may testify about his observations.

The court grants the unopposed motion to exclude evidence of Mr. May's stray comments at his deposition.

The paramedic may testify about his percipient observations and his opinion about whether Mr. May was in shock if the defendants lay a sufficient foundation for that opinion.

### 3. MIL 3: Exclusion of Post-Bite Interview

The court denies the motion. Mr. May is a percipient witness, and his reporting of the incident is relevant.

### 4. MIL 4: Drug Use

The motion is unopposed, and the court grants it.

### 5. MIL 5: Police-Practices Expert Brad Smith

The plaintiff moves to exclude several elements from the opinions of the defendants' police-practices expert, Brad Smith.

#### 5.1   Matters Not Included in Rule 26(a) Report

The plaintiff moves to exclude any testimony by Mr. Smith about the appropriateness of citing Mr. May for trespass or resisting arrest on the ground that it is not included in the export report. (ECF No. 91 at 2.) He similarly argues that his report does not mention probable cause at all, the County's statistic-keeping for dog deployments or bites, or the appropriateness of Detectives Laughlin's and Deputy Michel's questioning Mr. May at the Half Moon Bay substation and their resulting two-hour delay in taking Mr. May to the emergency room. (*Id.*) Finally, he asserts that Mr. Smith does not know about practices in police academies of using the California Committee of Peace Officer Standards and Training's Learning Domains. (*Id.* at 3.) They conclude he cannot opine on these matters. (*Id.*).

The defendants agree that Mr. Smith should not opine on matters not disclosed in his Rule 26 report (barring a supplemental disclosure or "opening the door" on cross-examination). (ECF No. 91-1 at 2.) They dispute that Mr. Smith did not disclose his opinions in his report or in his deposition. (*Id.*)

Generally, Mr. Smith is limited to his opinions in his report and elicited by Plaintiff's counsel during the deposition. (*See id.* at 3.) The plaintiff has not argued that he was substantially

prejudiced by previously undisclosed material (such as apparently the "bite ratios" and the contents of learning domains). He deposed Mr. Smith on these matters. The plaintiff did not seek to compel Mr. Smith to supplement his Rule 26 disclosures and he did not seek a further deposition on the allegedly new matters. It is enough that Mr. Smith revealed his opinions at his deposition and that the plaintiff's attorney had the opportunity to question him on them. *See Jackson v. Allstate Ins. Co.*, 785 F.3d 1193, 1204 (8th Cir. 2015); *Durham v. Cty. of Maui*, 729 F. Supp. 2d 1188, 1196 (D. Haw.), *aff'd*, 742 F. Supp. 2d 1121 (D. Haw. 2010); *W. All. Bank v. Jefferson*, 119 F. Supp. 3d 961, 968 (D. Ariz. 2015).

The court does expect counsel to stick to what is at issue in the case: the reasonableness of the force and the appropriateness of the subsequent arrest and detentions and thinks that the defense examination of its expert generally ought to hew to what is in the report.

### 5.2   Jury's Province – Resolving Facts for Jury – Credibility

The plaintiff objects to testimony such as "May did not comply with the canine announcement" because it invades the jury's fact-finding. (ECF No. 91 at 4–5.) The defense generally agrees but points out that experts may testify about the factual assumptions that are the predicate for their expert opinions. (ECF No. 91-1 at 3–4.)

The court grants the motion, which essentially is undisputed. Mr. Smith cannot opine on the credibility of other witnesses or testify about facts when he is not a percipient witness. For example, he cannot say that Mr. May is lying that he didn't hear the K-9 announcement. Nor can he say that he determined that Mr. May heard the announcement.

But, as discussed at the pretrial conference, the court mostly agrees with the defendants' assessment of the matters raised in this part of the plaintiff's motion. For all such fact issues, Mr. Smith can say that he assumed that such-and-such was the case and, on the facts so assumed, reached a given opinion. Assumptions can always be questioned on cross-examination. Experts, of course, can also be posed hypothetical questions that overtly assume facts. The court thus denies the plaintiff's motion insofar as it would wholly prevent Mr. Smith from testifying that he assumed some facts to be true (like the facts that the plaintiffs enumerate at ECF No. 91 at 5) and

FINAL PRETRIAL ORDER — No. 16-cv-00252-LB      9

on those assumed facts reached some particular opinion.

Judging from their discussion at the May 18th pretrial hearing, the parties do not seem to seriously disagree on these matters.

### 5.3 Matters Lacking Factual Support — Speculation

#### 5.3.1 "Any reasonable officer" would act as Deputy Laughlin did

The plaintiff moves to exclude Mr. Smith's opinion that, in short, "Any reasonable and prudent officer . . . would make the same decision" that Deputy Laughlin did in deploying Riggs. (ECF No. 91 at 6.) The plaintiff calls this a "speculative, nonsense opinion[]" that is inadmissible under Rule 702 and *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993). The court grants this motion.

This seems a problem of degree and diction — though it is not unimportant. It would be fair for Mr. Smith to conclude — based on specified factual assumptions; say, on the facts that Deputy Laughlin reported — that "a reasonable officer could" choose to deploy the canine. That much is supported by Mr. Smith's specific citation of police-canine and law-enforcement practices. It is probably too much to say that "any" or "every" reasonable officer would act the same. The latter drifts beyond reliable support and inference and becomes impermissibly speculative. Mr. Smith's opinions on this head will be thus cabined by the factual assumptions that he relies on to form his opinions.

#### 5.3.2 Circumstances that Deputy Laughlin might have considered

The plaintiff objects to Mr. Smith's testifying about the perimeter fence and how, if a deputy were not near the perimeter fence, Mr. May could jump the fence, escape, and cause harm. (ECF No. 91 at 6:25–7:7.) The motion is denied. It is within Mr. Smith's expertise, and it is sufficiently grounded in the facts of this case, for him to discuss the sorts of things that a suspect in this situation might have done and which an officer in Deputy Laughlin's shoes might thus have considered: such as a suspect's moving into a nearby residential neighborhood to cause further mischief or to evade capture.

### 5.3.3 Reaction Lag Time

The court withholds ruling on this motion. The plaintiff challenges Mr. Smith's subsidiary opinion that Deputy Laughlin's response would have lagged behind Mr. May's acts "by approximately three-quarters to one-and-a-half seconds." (ECF No. 91 at 7.) The plaintiff argues that this opinion is based on insufficient facts and data because (as he testified) "he has never done any studies about lag time." (*Id.*) The defendant replies that Mr. Smith invoked "training that police officers routinely receive at the police academy and studies performed by Force Science." *See* (ECF No. 91-1 at 5.)

The court offers the following thoughts on this issue. Common sense alone sufficiently teaches that between any action and reaction there exists some lag time. Going beyond this, it is uncertain whether Mr. Smith has adduced sufficient support for his more precise opinion. "[T]he proponent of . . . expert testimony . . . has the burden to establish its admissibility." *United States v. 87.98 Acres of Land More or Less in the Cty. of Merced*, 530 F.3d 899, 904 (9th Cir. 2008) (citing *Lust v. Merrell Dow Pharms., Inc.*, 89 F.3d 594, 594 (9th Cir. 1996)). At the same time, turning to the plaintiff's arguments, it is relevant that Mr. Smith has not "done any studies about lag time," but it is far from decisive. Rule 702 does not demand that an expert conduct the basic research in his field; nor that he himself do studies to confirm what other reliable work has shown. If Mr. Smith's opinion on this point proves admissible, then, as always, the plaintiff can cross-examine him on its limitations. *E.g., id.* at 596 ("Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence.").

Neither the plaintiff nor the defense has deeply explored the relevant part of Mr. Smith's testimony.[3] The defendants state that they will lay an adequate foundation for this opinion at trial. The court withholds its ruling on this issue until then.

---

[3] *See* Smith Rep. – ECF No. 92-9 at 11; Smith Dep. – ECF No. 92-10 at 11 (pp. 214–16).

FINAL PRETRIAL ORDER — No. 16-cv-00252-LB     11

### 5.3.4   States of Mind: Intent and Motivation

The court grants the plaintiff's motion insofar as it challenges Mr. Smith's ability to opine on (what the plaintiff calls) actors' "state of mind or motivation." (ECF No. 91 at 7–8.)

The court views this issue as follows. Some of the editorializing to which the plaintiff objects can be cross-examined. Furthermore, anyone who has scaled a seven-foot fence probably has done so "deliberately" and "willfully." If these adverbs are objectionable, they are triflingly so. There is moreover nothing objectionable — at least not as wrongly describing a "state of mind" — in Mr. Smith's opining that, in the (assumed) circumstances, it was reasonable for Deputy Laughlin to believe that a felony burglary was in process. *See* (ECF No. 91 at 8:14–19.)

That said, all witnesses — perhaps especially non-percipient witnesses — must avoid editorializing or characterizing other actors' conduct. On operative points, witnesses certainly should not ascribe to actors states of mind that have not been proved. Thus, for example, Mr. Smith should not describe the plaintiff as having "ignored" Deputy Laughlin's canine announcement, unless it is first proved that Mr. May heard the announcement and chose to disregard it. In the same vein, Mr. Smith may not opine directly about Deputy Laughlin's "intent and state of mind" concerning his deployment of Riggs. *See* (ECF No. 91 at 8:10–13) ("Deputy Laughlin's *intent* . . . in progress."). That would be speculative. Unless, of course, Mr. Smith is merely conveying an "intent and state of mind" that Deputy Laughlin testified to.

Judging from their discussion at the May 18th hearing, the parties do not seriously disagree over these matters. The court trusts everyone to stay in their lanes.

## 6. Medical Bills

The plaintiff has objected to the defendants' introducing Mr. May's medical bills from the San Mateo Medical Center. (ECF No. 121 at 3 [item #84].) The court grants the motion for the reasons given on the record at the May 18th hearing. The defendants did not oppose this motion.

## 7. Google Earth Photos

The court will rule on this material when it is offered. That said, this is familiar ground, and if

FINAL PRETRIAL ORDER — No. 16-cv-00252-LB      12

it aids the witness's testimony, and is described sufficiently (e.g., is or is not to scale), a foundation generally can be laid for such visual aids. The court hopes that the parties will not quibble about things that are not objectionable.

## VI. DEFENDANT'S MOTIONS IN LIMINE

For the reasons stated on the record and below, the court rules as follows.

### 1. MIL 1: Use of Force Unrelated to the Incident

The court grants the motion, which is largely unopposed. Evidence regarding the canine incident on July 14, 2014 is relevant and the plaintiff is not precluded from addressing it.

### 2. MIL 2: Injuries Other Than Leg

The court denies the motion, largely for the reasons that the plaintiff advances.

### 3. MIL 3: Evidence That No Charges Were Filed

The defendants move to exclude the evidence. The plaintiff counters that without it, the jury will wonder if Mr. May was charged and convicted. The court denies the motion. The evidence is relevant, and its probative value outweighs any prejudice. The plaintiff may not argue that the decision not to pursue charges suggests that the citations were improper.

### 4. MIL 4: Exclusion of Policies

The defendant's motion is denied. As discussed at the hearing, the policies are relevant. The Ninth Circuit has considered police-department policies in assessing the "quantum of force used" under the Fourth Amendment's reasonableness test as articulated through *Graham v. Connor*, 490 U.S. 386 (1989). *See, e.g., Smith v. City of Hemet*, 394 F.3d 689, 700–02 (9th Cir.) (*en banc*). The court and parties recognize that this does not mean that the trial will spill into a *Monell*-style exploration of the County's policies and alleged culpability for the incident in question. The jury instructions in any event will define the legal standards.

### 5. MIL 5: Other-Bites Evidence

The court mostly grants this motion. Evidence regarding the canine incident on July 14, 2014, however, as discussed above, is relevant. The plaintiff is not precluded from addressing it.

### 6. MIL 6: *Monell* Claim

This motion is partly granted. Evidence of departmental policies will be allowed as described under defendants' motion *in limine* #4, *supra*.

### 7. MIL 7: Indemnifying Detective Laughlin

The court grants the unopposed motion.

### 8. MIL 8: Timing of Presentation of Financial Information

The plaintiff has asked Deputy Laughlin to produce various documents that would depict his financial condition. (ECF No. 103 at 9–10; ECF No. 57-1.) (The parties raised this issue, too, in an earlier joint letter (ECF No. 57); the court postponed ruling on it until after summary judgment (ECF No. 58).) Such evidence is relevant to the issue of punitive damages. The defendant has moved to exclude this information from trial, however, until after the plaintiff proves that he is entitled to punitive damages. (Def. MIL 8 – ECF No. 101.) The defendant thus effectively asks the court to bifurcate the trial, leaving a tail stage in which the jury would return to set a punitive award. To this request, the plaintiff answers that such bifurcation is not the "standard practice" in this district and would be uneconomical. (ECF No. 101 at 2.)

The court denies the defendants' motion. The court will not bifurcate the trial. This evidence may be produced during the plaintiff's case-in-chief in a unitary liability-and-damages trial.

The parties agreed at the May 18th hearing that they would confer on reducing how many types of information the plaintiff would seek in this regard, the point being to reduce the production burden on Deputy Laughlin while giving the plaintiff sufficient information to make his case. This material will be subject to the protective order already entered in this case.

### 9. MIL 9: Exclusion of Certain Opinions of Ernest Burwell

#### 9.1   Riggs's "Problem" With "Biting and Re-Biting"

Mr. Burwell cannot say that Riggs has a "problem." His factual support is too limited to permit that opinion to be given reliably. He can say — based on his experience, particularly his voluminous familiarity with dog bites — that from what he's seen Riggs "bites and re-bites." It seems true that Mr. Burwell's opinion in this regard is most immediately based on his review of a limited set of photographs, the circumstances of which he knew little to nothing about. But these are matters for cross-examination. They do not make Mr. Burwell's "biting and re-biting" conclusion inadmissible. So long, that is, as it is shorn of the added conclusion that Riggs has a "problem." Mr. Burwell may show the photos on which he bases this opinion.

#### 9.2 Greatest Level of Non-Lethal Force

The defendant challenges, as insufficiently supported, Mr. Burwell's opinion that a police-dog bite is the greatest level of non-lethal force. The court grants the defendants' motion to exclude this evidence.

Mr. Burwell's expertise on police-canine practices does not entitle him to tell the jury, as an expert, which non-lethal force is the greatest. A jury can decide for itself the relative severity of police-dog bites, in general, and the bite in this case specifically. In terms of Rule 702, Mr. Burwell's opinion on this issue would not help the jury. Lay jurors will also have more familiarity with dog bites than they will with being Tasered, so that there is no good analogy (for these purposes) to cases in which an expert was allowed to describe to a jury the severity of using a Taser. Furthermore, there is abundant relevant case law that characterizes the relative severity of police-dog bites when compared to a baton or Taser. None of this law (that the parties have cited or the court has seen) calls dog bites categorically more severe than other non-lethal options.

A different but telling concern under Rule 702: Mr. Burwell has testified that he would maintain this opinion even if his cited sources did not prove to support it. *See* (ECF No. 105-1 at 7.) This of course may suggest only the strength of his convictions. But strong convictions alone do not satisfy Rule 702. And, even if Mr. Burwell is right in his opinion, without some extrinsic

support, Mr. Burwell would himself have to generate a much fuller, more heavily empirical analysis than anything he has offered here. Lacking either external support, or support that he himself reliably developed, Mr. Burwell's "greatest non-lethal force" opinion amounts to an impermissible "*ipse dixit*." *See, e.g., Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 137(1997). It is an opinion backed only by the claimed strength of his own expertise — exactly the sort of opinion that *Daubert* guards against. Finally in this vein, Mr. Burwell's willingness to persist in an opinion, even if his ostensible support for it were lost, raises the possibility that he is not proffering reliably formed opinions, so much as "weaving [the] story" that his client needs. *See De Jager Constr. Co. v. Schleninger*, 938 F. Supp. 446, 448 (W.D. Mich. 1996).

### 9.3 That Mr. May was in "Great Pain" Before Being Taken to Hospital

The court grants the defendants' motion to exclude this opinion. Even granting Mr. Burwell's familiarity with dog bites, it does not need an expert to tell the jury that Mr. May was in great pain. Especially when this witness is said to be an expert in police-canine practices and not in pain — which would be more of a medical expertise. The defendants are correct:

> The jury can base its findings of Mr. May's pain on the available non-expert evidence, including Mr. May's own testimony, photographs of the injuries, Mr. May's contemporaneous reports of pain levels to the paramedic and treating physicians, and Mr. May's medical records.

Mr. Burwell can properly opine that, given his injury, standard police practices dictated that Mr. May should have been transported to a hospital sooner. (Or equivalently stated testimony.) He also might opine that a person in evident pain — based on certain factual assumptions — ought to be transported to the hospital . But he cannot opine that Mr. May was in great pain because he is not a percipient witness to that fact or able to form that opinion.

### 9.4 That Commercial Burglary is "Not a Serious Felony"

The defendants also seek to exclude Mr. Burwell's opinion that commercial burglary is "not a serious felony." (ECF No. 105-1 at 9–11.) At the pretrial hearing, the parties seemed to agree on how Mr. Burwell may offer this opinion. They agreed that he may say that commercial burglary is

not a serious felony for purposes of the *Graham* excessive-force analysis; he may not say that commercial burglary is not a serious felony within the meaning of the San Mateo Sheriff's Department's policies.

**9.5 That Deputy Laughlin used "Excessive" or "Unreasonable" Force**

The defendants also move to exclude "Mr. Burwell's opinion that Deputy Laughlin used excessive or unreasonable force under *Graham v. Connor*." (ECF No. at 11.) This opinion, the defendants say, "invades the jury's function." (*Id.*)

At the May 18th hearing, the court addressed how the parties' experts should approach such "ultimate issues." The short answer is that such questions should be posed to expert witnesses through hypothetical questions. "Assuming this set of facts, might a reasonable officer conclude or do *X*?" Experts cannot tell the jury, point blank, that a given defendant "used excessive force" or "acted unreasonably." That would simply be telling the jury what to conclude. That would not help the trier of fact — and such an opinion would be barred even after the demise of the hoary "ultimate issue" rule. *See* Fed. R. Evid. 704 advisory committee notes ("The abolition of the ultimate issue rule does not lower the bars so as to admit all opinions. . . . [O]pinions must be helpful to the trier of fact . . . . These provisions afford ample assurances against the admission of opinions which would merely tell the jury what result to reach . . . .").

**MIL 10: Exclude Opinions Disclosed in Neither Report nor Deposition**

The court grants the motion. The parties' experts can testify to only those opinions that they disclosed in either their Rule 26(a) report or their deposition. See the related ruling on the plaintiff's motion *in limine* #5, *supra*.

## VII. WITNESSES AND DEPOSITIONS

The parties will call the witnesses on their separate witness lists at ECF Nos. 103-2 and 103-3. As discussed at the hearing, the parties identify the same witnesses, and the defendants will examine the witnesses when the plaintiff calls them (as opposed to recalling them).

FINAL PRETRIAL ORDER — No. 16-cv-00252-LB     17

## VIII. AUTHENTICITY

As discussed above, the parties must work to reach stipulations regarding authenticity.

## IX. TRIAL

At the end of each trial day (generally, by 2:00 p.m.), counsel must give notice of the order of proof (meaning, the order of witnesses and the exhibits, including illustrative exhibits) for the next trial day. The parties must notify the court of any issues by the end of the day so that the court can resolve them. To the extent that the parties will call hostile witnesses, which means that the opposing party's "cross-examination" will be its direct examination, counsel must provide a list of all exhibits to be used with the same witness on cross-examination (other than for impeachment).

**IT IS SO ORDERED.**

Dated: May 26, 2017

_____
LAUREL BEELER
United States Magistrate Judge